1  NEAL J. FIALKOW (SBN 74385)
   nfialkow@pacbell.net
2  JAMES S. CAHILL (SBN 70353)
   jscahilllaw@aol.com
3  LAW OFFICE OF NEAL J. FIALKOW, INC.
   215 N. Marengo Ave., 3rd Floor
4  Pasadena, CA 91101
   Telephone:(626) 584-6060
5  Facsimile: (626) 584-2950

6

7  Attorney for Plaintiff, Lawrence Peck, as an individual,
   for himself, and on behalf of all others similarly situated

8

9              **UNITED STATES DISTRICT COURT**

10        **CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

11  LAWRENCE J. PECK, an individual and       Case No.: 5:17-cv-1695 MWF (GJSx)
12  on behalf of all other similarly aggrieved  Assigned to Hon. Michael W. Fitzgerald
    employees,
13
14                                            DECLARATION OF JAMES S. CAHILL
                                              WITH EXHIBITS SUPPORTING
15         Plaintiff,                          PLAINTIFF'S  MOTION FOR ORDER
                                              REMANDING REMOVED ACTION TO
16                                            STATE COURT AND AWARDING
17         vs.                                ATTORNEYS' FEES
18
    SWIFT TRANSPORTATION CO.                  Date:    October 16, 2017
19  ARIZONA, LLC   and DOES 1 through         Time:    10:00 a. m.
20  30, inclusive,                            Court:   Courtroom 5A
21
22                                            Complaint Filed: Nov. 20, 2014
         Defendants.                          FAC filed: Dec. 3, 2014
23                                            Complaint Removed: Aug. 21, 2017
                                              Trial Date:  None
24
25
26
27
28      DECLARATION OF JAMES S. CAHILL WITH EXHIBITS SUPPORTING
    PLAINITFF'S MOTION FOR ORDER REMANDING REMOVED ACTION TO
          STATE COURT AND AWARDING ATTORNEYS' FEES

I, James S. Cahill, declare as follows:

1.     I am an attorney at law duly licensed to practice before this district court and am employed by the Law Offices of Neal J. Fialkow, Inc., counsel of record for Plaintiff Lawrence J. Peck in the above-captioned case. I make this Declaration in support of Plaintiff's Motion for Order Remanding Remove Action to State Court and Awarding Attorneys' Fees. I am sufficiently familiar with the facts and circumstances surrounding this litigation and, if called to testify as a witness, I could and would competently do so under oath.

## A.   *PECK* PAGA ACTION

2.     On November 20, 2014, Plaintiff Lawrence J. Peck filed the instant representative  action for Violations Under the California Private Attorney General Act ("PAGA")  the California Superior Court for Riverside County and entitled *Lawrence J. Peck et al. v. Swift Transportation Co. Arizona, LLC* Case No. RIC1411184 ("*Peck PAGA Action*"). A First Amended Complaint ("PAGA FAC") was filed on December 3, 2014. This is not a putative class action. Dkt.#1 (Not.Rem. at 4:1-19, Exs. A, B).

3.     In lieu of an answer, Defendant filed its motion to dismiss or stay the *Peck* PAGA Action. Dkt.#1  (Not. Rem. at 18:7-15, Exs. J-U). Defendant's motion was premised on forum non conveniens. Plaintiff opposed the motion. Defendant argued a stay was required to avoid duplicative litigation. On March 17, 2015, the Superior Court granted in part Defendant's motion and stayed the *Peck* PAGA Action

---

until July 14, 2015.  The stay was continued to November 16,2015, then to May 6, 2016 and again through June 22, 2016.

4.      On June 22, 2016, the Superior Court granted Plaintiff's motion lifting the stay of the *Peck* PAGA Action which had been in place for over 15 months. Dkt.#1 (Not.Rem. at 20-24, Dex. V-Y).  A true and correct copy of the Reporter's Transcript for the June 22, 2016 hearing before the  Superior Court is attached as Exhibit 1.

5.      On July 11, 2016, Defendant filed its Answer in the *Peck* PAGA Action. Dkt.#1  (Not.Rem. at 18:24, Ex. Z). Immediately thereafter, my law firm served form interrogatories and   over the past year propounded special interrogatories and document demands on Defendant and deposed Defendant's witnesses who Defendant identified having personal knowledge of Defendant's affirmative defenses in the *Peck* PAGA Action. A number of depositions of Defendant's other witnesses were planned for September/October 2017. Additionally, discovery motions were heard by the Superior Court. Dkt.##1,2 (Not.Rem. 18:26-19:10, 19:18-20, Exs. BB-MM, XX-YY).

6.      At the Case Management Conference on May 22, 2017, Superior Court Judge Sharon J. Waters found the *Peck* PAGA Action was complex, issued her Case Management Order and announced that at the trial setting conference on July 11, 2017 the trial date and pre-trial deadlines would be set. A true and correct copy of Judge Waters's Case Management Conference Order—PAGA Claims is attached as Exhibit 2. At the trial setting conference on July 11, Judge Waters set trial plan hearing for November 15, 2017, inquired about dispositive motions, and set a hearing for August

DECLARATION OF JAMES S. CAHILL - 2

28, 2017 to determine if this PAGA action is entitled to a jury trial. Judge Waters set trial for August 17, 2018.

7.   Before Defendant filed its removal notice in the *Peck* PAGA Action,  my office  filed and served two additional discovery motions against Defendant: motion to compel answers to special interrogatories set for hearing on September 11, 2017 ; and motion to compel production of document at deposition set for hearing on September 19.A true and correct copy of the cover page  of Plaintiff's Notice of Motion (1) To Compel Further Response To Special Interrogatories (Set One) Against Defendant and (2) For Order Awarding Monetary Sanctions is attached as Exhibit 3. A true and correct copy of the cover page of Plaintiff's Notice of Motion (1) To Compel Production of Documents At Deposition Against Defendant and (2) For Award of Monetary Sanctions is attached as Exhibit 4. These motions were taken off calendar when the Superior Court was notified about Defendant's removal notice.

8.   We also noticed the deposition of Ms. Sarah Koogle  for September 4, 2017 in Phoenix, Arizona. Ms. Koogle was identified in Defendant's verified responses to form interrogatories that Ms. Koogle had personal knowledge about Defendant's affirmative defenses in the *Peck* PAGA Action. Defendant had been resisting her deposition for several motions. This deposition did not occur due to Defendant's removal notice.  A true and correct copy of Mr. Neal Fialkow's September 1, 2017 letter to Mr. Robert Mussig regarding Ms. Koogle's deposition is attached as Exhibit 5.

9.      On April 10, 2017, my office served Plaintiff's Special Interrogatories, Set One on Defendant. Defendant served its responses and objections on May 30. A true and correct copy of Defendant Swift Transportation Co. of Arizona, LLC's Responses to Plaintiff's Special Interrogatories, Set One is marked Exhibit 6 and is attached.

10.     On November 30, 2016, Mr. Neal Fialkow deposed Mr. James Fitzsimmons in the *Peck* PAGA Action. Mr. Fitzsimmons's testimony was transcribed by a certified shorthand reporter.  True and correct copies of the cover page, page 150, and page 205 of the transcript of James Fitzsimmons dated November 30, 2016 are collectively marked Exhibit 7 and are attached.

11.     On July 26, 2017, Mr. Neal Fialkow deposed Mr. James Fitzsimmons who Defendant presented for this deposition as Defendant's person(s) most qualified ("PMQ") in response to our June 14, 2017 deposition notice on Defendant under Cal. Code Civ. Proc. §2015.230 in the *Peck* PAGA Action. Mr. Fitzsimmons's testimony was transcribed by a certified shorthand reporter. The following questions and answers occurred:

Q: How long would you say a pre-trip normally takes.

A: It would depend on-

Q: A pre-trip inspection?

A: It would depend on the driver.

Q: What is the average time?

A: Two minutes.

DECLARATION OF JAMES S. CAHILL - 4

True and correct copies of the cover page, pages 74 and 163 of the Transcript of Deposition of James Lee Fitzsimmons dated July 26, 2017 are collectively marked Exhibit 8 and are attached.

**B.    *PECK* CLASS ACTION**

12.    On September 25, 2014, a putative class action was filed in the California Superior Court for Riverside County and entitled *Lawrence J. Peck v. Swift Transportation Co. Arizona, LLC* Case No RIC 140981 ("*Peck* Class Action"). A PAGA claim is not asserted.

13.    Defendant filed an answer on October 22, 2014.  Defendant removed the *Peck* Class Action to the U. S. District Court, Central District of California, Case No. 5:14-cv-2206-VAP-KKx under the Class Action Fairness Act on October 24, 2014. A true and correct copy of Defendant's Notice of Removal in the *Peck* Class Action (without exhibits) is attached as Exhibit 9.

14.    Plaintiff  moved to stay the *Peck* Class Action which Defendant opposes (in part) due to Defendant's removal of the *Peck* PAGA Action. The stay motion was set for hearing on September 11, 2017 but Chief U.S. District Judge Virginia A. Phillips vacated the hearing and submitted the matter on the papers.  The moving and opposing papers are on file in the *Peck* Class Action, Dkt.##32-33, 37.

**C.    ATTORNEYS' FEES**

15.    I spent approximately 17 hours preparing and conducting Local Rule 7-3 Conference and preparing Plaintiff's Motion for Remand and this Declaration. My

---

DECLARATION OF JAMES S. CAHILL - 5

hourly rate for this matter is $750.00 for a total of $12,750. In my opinion, $12,750 is fair and reasonable sum of attorneys' fees  for bringing this Remand Motion.

16.    I graduated from Loyola Law School, Los Angeles in 1976. I was admitted to the California State Bar in 1976 and have been practicing continuously as a lawyer in California to the present. I am also admitted to and practiced before the United States District Courts for the Central, Northern and Eastern Districts of California as well as the United States Court of Appeals for the Ninth Circuit. I have appeared and argued cases before these District and Circuit Courts.

17.    For the past 25 years, I practiced in Los Angeles, California and more recently in Pasadena almost exclusively representing plaintiffs in civil class actions in state and federal courts. After leaving Jones, Day, Reavis  & Pogue, from November 1990 through December 2011 I worked for the Law Offices of Henry H. Rossbacher. From August 2013 through the present I have worked for the Law Offices of Neal J. Fialkow, Inc.  I have been responsible for prosecuting class and representative cases involving state and federal securities fraud, ERISA, state and federal anti-trust violations, consumer fraud and California wage and hour violations. A number of these class cases helped developed the jurisprudence of the California Unfair Competition Law, False Advertising Law and the Consumer Legal Remedies Act. *See, e.g., Rose v. Bank of America, N.A*., 57 Cal.4th 390 (2013); *Colgan v. Leatherman Tool Group, Inc*., 135 Cal.App.4th 663 (2006); *Washington Mutual Bank v. Superior Court*, 75 Cal.App.4th 777 (1999). For the past several years, I have represented employees

DECLARATION OF JAMES S. CAHILL - 6

against employers involving wage and hour violations and representative claims under the California Private Attorney General Act. *See, e.g., Hernandez v. Ross Stores, Inc.* (2017) 7 Cal.App.5th 171.

18.     My current billing rate is \$750.00 per hour on class and representative cases at the Law Offices of Neal J. Fialkow. This hourly rate is competitive with prevailing rates charged by other plaintiffs' counsel in California with comparable skill and experience.

19.     I maintain time sheets for all work that I perform as a lawyer. I record contemporaneously the time I spend on each case including this case.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on September 15, 2017 at Pasadena, California.

By: _____
        James S. Cahill
        Attorneys for Plaintiff, Lawrence J. Peck

DECLARATION OF JAMES S. CAHILL - 7

# EXHIBIT 1

SUPERIOR COURT – STATE OF CALIFORNIA

COUNTY OF RIVERSIDE

LAWRENCE J. PECK, an individual and on      )
behalf of all other similarly aggrieved    )
employees,                                  )
                                            )
                Plaintiff,                  )
                                            )
        versus                              )        Case No. RIC1411184
                                            )
SWIFT TRANSPORTATION CO. ARIZONA, LLC,      )
and DOES 1 through 30, inclusive,           )
                                            )
                Defendants.                 )
_____    )

REPORTER'S TRANSCRIPT OF MOTION TO LIFT STAY

BEFORE THE HONORABLE JOHN D. MOLLOY

June 22, 2016

APPEARANCES:

For the Plaintiff:          LAW OFFICE OF NEAL J. FIALKOW
                            By:  Neal J. Fialkow
                                 James Cahill
                            215 North Marengo Ave., Third Floor
                            Pasadena, California  91101

For the Defendant:          SHEPPARD MULLIN RICHTER & HAMPTON
                            By:  Robert Mussig
                            333 South Hope Street, 43rd Floor
                            Los Angeles, California  90071

Reported by:                TRINA N. FEHLMAN, CSR No. 10684

1              RIVERSIDE, CALIFORNIA; WEDNESDAY, JUNE 22, 2016

2                   BEFORE THE HONORABLE JOHN D. MOLLOY

3              THE COURT:  Peck versus Swift.

4              MR. CAHILL:  Good morning, your Honor.  James Cahill

5     appearing for plaintiff and moving party.

6              MR. FIALKOW:  Good morning, your Honor.  Neal Fialkow,

7     also appearing for plaintiff and moving party.

8              MR. MUSSIG:  Good morning, your Honor.  Robert Mussig

9     for defendant.

10             THE COURT:  All right.  Good morning to all of you.

11    This is a motion to, essentially, lift the stay as to the PAGA

12    actions.

13             The Court is inclined to do so.  And I will explain

14    why.  I understand that there's a federal action that's currently

15    pending that involves some -- well, many of the same issues.  But

16    here is the main issue, and the reason that the Court is inclined

17    to lift the stay.

18             The Court's inclined to lift the stay because the

19    plaintiff is different.  The plaintiff is the State of

20    California.  And yes, I understand that we -- we have a person

21    who is representative who is -- that's Mr. Peck, is it -- yes, it

22    is Mr. Peck.  But he only acts as a surrogate for the State of

23    California.

24             The other PAGA action in the related case has been

25    sitting still for, what, six years now?

26             MR. MUSSIG:  I -- I disagree that the PAGA claim --

27    it's the *Burnell* case.

28             THE COURT:  Yes.

1      MR. MUSSIG:  The *Burnell* matter that's sitting in front

2  of Judge Phillips has been sitting still.

3      THE COURT:  She didn't certify the class.

4      MR. MUSSIG:  She did not certify a class.  But that's

5  typical in a case where there are class claims and PAGA claims.

6      THE COURT:  Sure.

7      MR. MUSSIG:  Typically, the class action aspect of it

8  will be addressed first.  And then the PAGA aspect of it will be

9  addressed.  Often, and in plaintiff -- in fact in their

10  opposition, cites several cases where that very thing happened.

11  They cite those cases for the proposition that the federal courts

12  are hostile towards PAGA.  That's just untrue.

13      In those cases, what happens is that class claims are

14  deemed uncertifiable.  And then the Court addresses the PAGA

15  claim.  So the PAGA claim involves all the same issues as a class

16  claim.  So it's inaccurate to say it's been sitting still,

17  because all the discovery that's been happening over the last six

18  years -- the depositions, the written discovery, all of the

19  disputes that go along with that -- all goes to the PAGA claim

20  just as much as it goes to the class claims.  And so that aspect

21  of it will be dealt with.

22      I believe the *Burnell* action, the plaintiff has

23  indicated they may seek to appeal the Court's denial of class

24  certification.  So that will be addressed first.  But certainly,

25  the PAGA claim has not been sitting.

26      THE COURT:  That loud voice.  Go ahead.

27      MR. MUSSIG:  Certainly, the PAGA case has not been

28  sitting still for six years.  I don't think it's accurate to

1    characterize it as much because everything that's happened with
2    respect to the class claims will eventually go to the PAGA claim.
3    That's just the steps that these cases follow.
4            And so however you look at it, the plaintiff in this
5    case, whether it's Mr. Peck or whether it's Mr. Peck acting as a
6    surrogate for the State, in which case the State is the real
7    plaintiff, has another case against this defendant, this same
8    defendant.
9            THE COURT:  No, the State doesn't.  Well, the State.
10           MR. MUSSIG:  Absolutely the State of California has
11   another case --
12           THE COURT:  PAGA.
13           MR. MUSSIG:  -- has another PAGA case in the *Burnell*
14   action pending against this defendant.  The State wouldn't be
15   permitted to pursue two different actions based on the same
16   theories.  The claims overlap.  The claims in this case are
17   minimum wages, overtime, waiting time penalties, reimbursement,
18   pay stubs.  The claims in the *Burnell* case are minimum wages,
19   meal and rest, reimbursement, pay stubs, wait time penalties.
20   The claims overlap.
21           This plaintiff, even if you assume it is the State of
22   California, has another case that it is currently prosecuting,
23   actively prosecuting against this same defendant.  And so that
24   just can't be.
25           THE COURT:  When was the *Burnell* case filed?
26           MR. CAHILL:  It was filed in 2010, your Honor.
27           THE COURT:  Okay.  And our case is filed in 2014,
28   November.

```
 1              MR. CAHILL:  Right.

 2              MR. MUSSIG:  Yes, several years after the Burnell case.

 3    Several years of litigation in the Burnell case:  discovery,

 4    discovery disputes that the parties have gone through,

 5    depositions.

 6              The problem with prosecuting two separate cases, with

 7    the same plaintiff prosecuting two separate cases -- I mean,

 8    there are several.  One is -- is the, sort of, unsavory aspect of

 9    trying to get two bites at the apple.  But really, the problem,

10    from our perspective, is the duplicative nature of it.

11              THE COURT:  Well, in terms of -- in the terms of the

12    class actions versus the PAGA actions, they do essentially get

13    two bites at the apple.

14              MR. MUSSIG:  I agree in the same case, though, not in

15    two separate cases.  And so what you have is --

16              THE COURT:  Except that it's quite often that we have

17    to send the class action off to arbitration because there's a

18    binding arbitration agreement that doesn't bind the PAGA cause of

19    action.

20              MR. MUSSIG:  Yeah.  But in that case what happens,

21    under California case law, the PAGA claim is stayed.

22              THE COURT:  It can be stayed.  It's not absolutely

23    stayed.

24              MR. MUSSIG:  I know there are cases that say it should

25    be stayed.

26              THE COURT:  They say it should be, but it's not

27    mandatory.

28              MR. MUSSIG:  I suppose there's not a requirement,
```

1    but --

2            THE COURT:  But even if it's stayed, the outcome of

3    the -- the outcome of the underlying class action does not

4    control the outcome of the PAGA -- or the PAGA cause of actions.

5            MR. MUSSIG:  But the outcome of the underlying

6    arbitration can.  Absolutely.  That's one of the reasons the

7    cases say the PAGA claim should be stayed.  Because if in the

8    arbitration it is determined that the plaintiff doesn't have a

9    claim, was not injured, in other words, is not an aggrieved

10   employee, he or she is incapable of being a PAGA representative.

11           And so that -- that's exactly -- that's exactly the

12   outcome we're asking for here.

13           THE COURT:  But that's one of -- that is one possible

14   outcome, but not all -- okay.  Go ahead.

15           MR. MUSSIG:  So we're asking for the exact same relief

16   here:  A stay while the Burnell PAGA claim is adjudicated.

17           I suppose if -- if the Burnell PAGA claim --

18           THE COURT:  Burnell PAGA claim, then we're six years

19   into it.  We're six years into that lawsuit and nothing's

20   happened; right?

21           MR. MUSSIG:  I don't think that's accurate.

22           THE COURT:  Okay.  Go ahead.

23           MR. MUSSIG:  Absolutely a lot has happened, and that's

24   precisely why it should be stayed in this case, because all the

25   discovery has been taken in the Burnell case.  And so --

26           THE COURT:  When is it going to trial?

27           MR. MUSSIG:  I don't believe there's a trial date.  But

28   what the next thing that will be briefed is the viability of the

TRINA N. FEHLMAN, CSR, RPR, CRR

5

1  PAGA claim.

2        THE COURT:  All right.

3        MR. MUSSIG:  So at a minimum, I think, the stay should

4  remain in effect until that occurs, until Judge Phillips has

5  ruled.  Or I suppose it's possible, as plaintiffs point out in

6  their papers, the PAGA claim could be dismissed.  I don't think

7  that's very likely.

8        I think the most likely outcome, for practical purposes

9  as you and I probably know, is they will now pursue the PAGA

10  claim and Judge Phillips will be asked to adjudicate that.  And

11  so the stay should remain in effect, at least, until Judge

12  Phillips has an opportunity to do that.

13        THE COURT:  Is a motion set for that, for her to make a

14  determination?

15        MR. MUSSIG:  There's nothing set, I agree.  But it -- I

16  mean, I guess the stay could remain in effect for -- what we

17  would request, at least, is another six months to allow that to

18  develop and see whether or not that goes anywhere.

19        THE COURT:  If we do it for another six months, then

20  we're -- we're in the seventh year of that other case.

21        MR. MUSSIG:  I agree.  And -- and I am not here to,

22  sort of, opine as to why Judge Phillips believes -- well, there's

23  been a lot that happened -- that's happened in that case.

24        THE COURT:  And I won't comment.

25        MR. MUSSIG:  Yeah.  In that case there was a change in

26  the law, basically.

27        THE COURT:  Okay.

28        MR. MUSSIG:  There were meal and rest period claims in

TRINA N. FEHLMAN, CSR, RPR, CRR

```
 1    that case, which were -- I don't know if they were dismissed.  I
 2    believe they were dismissed.  There was another case that went up
 3    to the Ninth Circuit.  They said that meal and rest period claims
 4    should not be dismissed on that basis.  They came back down to
 5    Judge Phillips.  So there were appeals, stays along those lines.
 6            THE COURT:  Sure.
 7            MR. MUSSIG:  But a lot of discovery's been taken in
 8    that case -- the depositions, written discovery -- all in advance
 9    of the class certification hearing and the class certification
10    briefing, which now will be used in connection with the PAGA
11    claim.
12            THE COURT:  Here's -- here's -- my quandary is I have
13    no -- I don't see the light at the end of the tunnel on even that
14    PAGA claim.  I don't see that it's scheduled, that it is
15    scheduled for determination on the merits or for a determination
16    of the viability of the determination on the merits, neither one.
17            MR. MUSSIG:  I understand it's not scheduled, but it is
18    being actively litigated.  Right now the focus of the case is
19    slightly different.  The focus of the case is the classification
20    aspect of it.  But it absolutely is being litigated.  All of the
21    discovery goes to the PAGA claim, because the PAGA claim is based
22    on all of the same theories that they sought class certification
23    on.  Similar to this case where there's a --
24            THE COURT:  But mostly -- most cases like this are that
25    way; right?  Almost all of the discovery overlaps.
26            MR. MUSSIG:  Oh, yeah, absolutely.  I agree.
27            THE COURT:  And that's why we -- and I will tell you,
28    in this courtroom, I typically stay PAGA claims if -- if I'm
```

1    sending the class participants off to arbitrate. I will

2    typically do that. But I have a pain threshold as cases start to

3    get old. I'm -- I hate seeing cases get old. I despise it for a

4    number of reasons. Not the least of which, this county has a

5    still quite rich history of having tremendous backlogs, both on

6    the criminal side and on the civil side. And we've done a --

7    we've done -- we've made great strides in reducing those

8    backlogs. So when a case like this one starts to approach two

9    years, it starts hitting the alarm bells with me.

10          All right. Let me hear from the other side for now.

11   Go ahead.

12          MR. FIALKOW: Just a few things, your Honor. This is

13   Neal Fialkow.

14          THE COURT: Thank you, sir.

15          MR. FIALKOW: I think the starting point is 583(b). If

16   we had -- if the *Burnell* case was here, five years would be gone,

17   the case would be over. There'd be no excuse.

18          Now, the federal -- the federal system does not have a

19   583(b). It can go on and on ad infinitum. And at some point in

20   time, a case really needs to get tried. It's not fair to

21   litigants to have a case sitting there for years and years and

22   years, and the attorneys feel like a potted plant, and the Court

23   feels like, what are we doing here?

24          And so everybody loses on the justice end. But even

25   beyond that, let's -- let's take a look why holding it in

26   abeyance really means nothing. Because counsel makes the

27   assumption that the two cases are the same, and they are not.

28   Theories of a case are extremely important. Theories of a case

1    determine outcome.  Here, the class action that was determined
2    was a loser to the federal court.
3              Clearly, you know, I don't know what's going to happen
4    on the -- on the -- on the PAGA case.  The Court could just let
5    it sit --
6              THE COURT:  You're speaking of the *Burnell* case now.
7              MR. FIALKOW:  I'm talking about the *Burnell* case.
8              THE COURT:  Okay.  Go ahead.
9              MR. FIALKOW:  You know, Judge Phillips could let it sit
10   forever.  She could revert it back.  She could do nothing.  But I
11   can tell you this:  Our claims are completely different because
12   they have different theories.  So at the end of the day, even if
13   you held it in abeyance and another year goes by, six months goes
14   by, whatever the case may be, we're going to at some point in
15   time have this conversation with you, Our claims are different.
16   And we have the right to pursue them.  I mean, you can't just
17   say, Oh, PAGA case over in federal court, take a hike, Counsel,
18   your case is over.  I mean at some point in time, there's going
19   to have to be a ruling.  And we're going to get into the
20   analytics of this claim.
21             And so my thought is, let's use our time wisely.
22   Let -- let us have the discovery.  Let us have some discovery,
23   and we'll show you the analytics.
24             And then at some point in time, you know, even if Judge
25   Phillips dismissed the case, you're going to have to make a
26   decision whether or not it's res judicata, what it means.
27   Because I -- I -- you know, I've tried a class action case.  I
28   think everybody will agree that PAGA cases is a whole different

1   creature. And everyone's trying to figure out what to do. But
2   one thing is clear: The action belongs by the State. It was
3   emergency legislation because the legislature felt that the
4   administrative agency itself, the LWDA, didn't have enough
5   assets. And it was trying to get more money into the coffers and
6   trying to move things along.

7          By holding a case in abeyance for several years kind of
8   frustrates the legislative intent. Especially when you have
9   Judge Phillips holding a case, which is really a State action.
10  And in fact, one thing that I've done in the past, because I do a
11  lot of these, is I never file my PAGA actions within the claim
12  itself of the class action. Because I don't want it removed on a
13  pendente lite basis.

14         So to me, it just makes sense that we do some
15  discovery. And I would suggest this. You say, okay, Counsel,
16  give the outgoing company what you got on *Burnell*. Let them take
17  a look at it. I -- I am not trying to make duplicative discovery
18  here. I will use the time wisely. If -- if counsel says we're
19  being duplicative, I have no problem going forward with a case
20  management plan.

21         THE COURT: That's a different discussion.

22         MR. FIALKOW: Of course it is.

23         THE COURT: That's a discussion that's going to occur
24  if I actually lift the stay. And I would absolutely encourage
25  you to have those types of discussions informally to try and
26  obviate -- well, try and reduce the expense of discovery.
27  Especially if it's already been propounded and there is a
28  tremendous amount of overlapping information.

1       But I don't know that for certain.  I do understand
2   that there are some similarity of parties in the two actions.
3       All right.  Counsel, I'm still inclined to lift the
4   stay.  I'm not inclined to allow a case that sat here for longer
5   than two years without something happening on it, without -- if
6   you told me, We are set for a hearing in front of Judge Phillips
7   next week or even next month, we're set for it, it's been
8   briefed, she's going to rule on it, I probably would put this
9   over, this motion over, until after that so we could see what
10  effect, if any, that her -- her determination had on it.  But I
11  don't have any of that.  I don't have any light at the end of the
12  tunnel for me.
13      MR. MUSSIG:  Well, I would request, then, that the stay
14  remain in effect for at least three more months.  We can come
15  back in -- or two months.
16      THE COURT:  I'm not going to do that.
17      MR. MUSSIG:  And we can --
18      THE COURT:  No.  If you had something set, I would.
19  But you don't.  I'm not going to.
20      I understand your frustration.  I understand your
21  concerns.  But I have to, at the end of the day, have some belief
22  that -- that something outcome-determinative is going to happen,
23  and I don't.  I believe it will happen eventually.  But I don't
24  have -- I don't have any idea of when and if it will happen.
25  And --
26      MR. MUSSIG:  I think that's -- I mean, that's a big
27  part of the problem, is it will happen eventually.  And because
28  the parties are the same, the party in that case is the State,

1   the party in this case is the State, it doesn't matter whether
2   the theories are different.

3          THE COURT:  We may have a determination in this lawsuit
4   long before we have one in that too.  That could happen.  And
5   then you can litigate in federal court what effect, if any, this
6   Court's determinations have on its lawsuit.

7          And I understand that that's one of the big problems of
8   duplicative overlapping litigations.  It's one of the
9   proposition -- it's one of the vagaries of having two different
10  forums deal with the matter.  But I do have a lawsuit that's been
11  properly filed in this jurisdiction.  It has been going on
12  since -- well, it has been around since November of 2014.  I'm
13  not staying it any longer.  The stay is lifted.

14         MR. MUSSIG:  Can we at least do -- I agree the parties
15  can meet and confer about some sort of discovery plan.  Here's
16  what I'm anticipating.  Any discovery they serve, we're going to
17  object as duplicative.  This party has already served that
18  discovery.  Maybe not in this case, but a separate case.  And
19  it's just going to lead to a bunch of disputes.

20         THE COURT:  For right now I'm going to encourage you to
21  meet and confer.  I'm -- you're encouraged to meet and confer.
22  I'm not going to make any rulings without a motion in front of
23  me.  If you want to -- if we need to have a case management plan,
24  we can talk about that.  But first, we're going to let the
25  informal process go.

26         MR. MUSSIG:  Oh, I'm not suggesting any sort of
27  discovery rulings.  What I'm suggesting, I suppose, is somewhat
28  analogous to a Rule 26 conference in federal court where --

```
 1              THE COURT:  I'm lost.
 2              MR. MUSSIG:  Oh, I apologize.  Where we can set a CMC
 3  or a case management -- a case management conference, status
 4  conference, something along those lines in this case.  And the
 5  parties can meet and confer and try to come to some sort of
 6  agreement as to what discovery is going to look like.
 7              THE COURT:  Oh, case management conference I'll set for
 8  30 days.  I'll set it out for 30 days.
 9              THE CLERK:  We'll go July 28th.
10              THE COURT:  July 28th, 8:30 a.m., this department.
11              MR. CAHILL:  Excuse me, your Honor, we didn't hear what
12  you just said.
13              THE COURT:  Case management conference.
14              MR. FIALKOW:  Ah.
15              MR. CAHILL:  So you're setting a case management
16  conference, but you're lifting the stay.
17              THE COURT:  Correct.
18              MR. CAHILL:  And the --
19              THE COURT:  So I'll see you back in 30 days so we can
20  then -- then you'll let me know what's going on with your
21  discovery efforts.
22              MR. CAHILL:  And we don't have -- your Honor, we don't
23  have an answer from the defendant.  So we expect an answer from
24  the defendant by that time.
25              THE COURT:  All right.  Well -- or a surrogate.
26              MR. CAHILL:  Right.
27              THE COURT:  Right?  It's an answer or a challenge.  I
28  don't -- we'll see.  All right.  Thirty days.
```

```
 1              MR. FIALKOW:  Thank you so much.

 2              MR. CAHILL:  Thank you, your Honor.

 3              MR. MUSSIG:  Is that at 8:30, your Honor?

 4              THE COURT:  It is.  8:30 a.m., this department.

 5              MR. CAHILL:  Notice is waived, your Honor?

 6              THE COURT:  Notice waived?

 7              MR. MUSSIG:  Notice waived, your Honor.

 8              MR. CAHILL:  It was July 28?

 9              THE COURT:  Correct.  July 28, 8:30 a.m., this

10    department.

11                      (Proceedings concluded.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
```

TRINA N. FEHLMAN, CSR, RPR, CRR

REPORTER'S CERTIFICATE

| | |
|---|---|
| LAWRENCE J. PECK, an individual and on behalf of all other similarly aggrieved employees, | ) ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| versus | ) Case No. RIC1411184 |
| | ) |
| SWIFT TRANSPORTATION CO. ARIZONA, LLC, and DOES 1 through 30, inclusive, | ) ) |
| | ) |
| Defendants. | ) |
| | ) |

        I, Trina N. Fehlman, Certified Shorthand Reporter No.

10684, hereby certify:

        On 06/22/16, in the county of Riverside, state of

California, I took in stenotype a true and correct report of the

testimony given and proceedings had in the above-entitled case,

pages 1-14, and that the foregoing is a true and accurate

transcription of my stenotype notes, and is the whole thereof.


DATED:  Riverside, California, July 12, 2016.


                                    _____
                                    Trina N. Fehlman, CSR No. 10684

# EXHIBIT 2

SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF RIVERSIDE

| CASE TITLE: Peck v. Swift Transportation | Department 10 |
|---|---|
| CASE NO.:   RIC 1411184 | F I L E D |
| DATE:       May 23, 2017 | SUPERIOR COURT OF CALIFORNIA COUNTY OF RIVERSIDE |
| CASE MANAGEMENT ORDER - PAGA CLAIMS | MAY 2 5 2017 |
| | L. Hall |

Unless and until ordered otherwise, the following provisions shall govern the management of this case. Plaintiff shall serve a copy of this order on all parties and shall file proof of service of the same.

A.   Case Management

1.   The Court provisionally finds that this is a complex case. (Cal. Rules of Court, rules 3.400(c)(6) and 3.403(b).) The clerk shall impose fees accordingly. The court will entertain objections to this designation at the next Case Management Conference/Status hearing.

2.   The Court finds that this case involves exceptional circumstances that are likely to prevent this case from meeting the goals and deadlines set by California Rules of Court, rule 3.713(b). Accordingly, this case is exempt from those case disposition time goals. (*Id.*, rule 3.714(c)(1).) With the input from the parties, the Court shall develop a case progression plan with the goal of disposing of the case within three years. (*Id.*, rule 3.714(c)(2).)

3.   This case has been assigned to Department 10 for all purposes, including case management, law and motion, and trial.

4.   Five days before the initial case management conference, the parties shall file a joint case management statement (1) addressing the issues set forth in California Rules of Court, Rule 3.750; (2) proposing a case progression plan, which shall include a mediation schedule, a proposed discovery schedule, including dates for completion, and a proposed trial date; and (3) identifying any other issues any party would like to discuss with the Court.

5.   Five days before any subsequent case management or status conference, the parties shall file a joint case management statement (1) addressing the status of the case, including compliance with the case progression plan, the progress of discovery and mediation and (2) identifying any issues the parties would like to discuss with the Court.

6. The parties shall not file Case Management Statements on Judicial Council form CM-110.

7. **Until otherwise ordered, the lead counsel shall personally appear at all case management/status conferences. Court Call is not permitted.**

B. Pleadings

1. Before filing a demurrer, a motion to strike, a motion for judgment on the pleadings, or any other challenge to an opponent's pleading, the parties shall meet and confer to determine whether the challenge is arguably meritorious and, if so, whether the parties will stipulate to leave to amend being granted to allow the pleading to be amended in an attempt to cure the asserted defect. Additionally, if any party believes that its pleadings require amendment, before filing any motion to amend, the parties shall meet and confer to determine whether the parties will stipulate to leave to amend being granted.

By "meet and confer," the Court means that counsel for the parties shall meet with each other, either by telephone or in person, to discuss any arguable defects in the pleadings, and whether those potential defects can be resolved or diminished by amendment. Merely sending a letter to opposing counsel does not constitute a meeting, and thus does not comply with this order.

2. Any challenge to a pleading, and any motion for leave to amend a pleading, must be accompanied by a declaration describing those meet-and-confer efforts and establishing that such a stipulation to amend was sought without success.

C. Discovery

1. No discovery motions may be filed without leave of court. If the parties are unable to resolve a discovery dispute, then counsel shall contact the clerk of this department to schedule an informal conference at which the court will discuss the dispute with counsel and, if not resolved to the parties' satisfaction, will consider any request for leave to file a formal motion. The conference may be conducted by telephone or in person, as counsel prefer.

D. Mediation

1. The Court expects the parties to engage in private mediation at the earliest practicable time. The "earliest practicable time" means before the parties commence formal discovery but after each party has obtained, through informal means, sufficient information from the opposing party(s) so as to be able to engage in meaningful mediation.

2. If the parties do not agree to engage in private mediation, the parties shall explain their reasons to the Court in their joint case management statement.

E.   Court Approval of PAGA Settlement

Pursuant to Labor Code §2699, subd. (l)(2), the Court is required to review and approve any settlement of a civil action involving recovery of civil penalties under the Private Attorney General Act (PAGA). To facilitate that review and to assist the Court in deciding whether the settlement should be approved, the parties shall comply with the following:

1.   Any request to approve a PAGA settlement shall be made by a properly noticed motion.

2.   To assist the Court in determining whether imposition of the maximum civil penalty would be unjust, arbitrary, oppressive or confiscatory (Lab. Code, § 2699, subd. (e)(2); *Amaral vs. Cintax Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1213-1214), the motion shall provide the Court with argument and evidence of each of the following:

a.   The nature of the alleged violations.

b.   The number of alleged individual violations, including both the length of the relevant employment period and the number of employees allegedly employed during that period.

c.   The total amount of penalties for which the defendant is potentially liable should those allegations are proven.

d.   The extent to which the alleged violations would be likely to be found true at trial, considering the weight of the evidence, the clarity of the applicable law, and the strength of any factual or legal defense likely to be asserted by the defendant.

e.   The nature and extent of the discovery or other investigation undertaken by the plaintiff to estimate the likelihood of proving those allegations at trial.

f.   Whether the defendant's violations were knowing and intentional within the meaning of Labor Code section 226, subdivision (e)(1).

g.   The total amount of penalties for which the defendant would be likely to be found liable at trial.

h.   Any other facts that tend to suggest that the imposition of the total amount of statutory penalties for which the defendant would be likely to be found liable at trial would be unjust, arbitrary and oppressive, or confiscatory.

i.   How the amount of the agreed-upon penalties was calculated or otherwise arrived at.

j.      Whether the parties utilized the services of any neutral party to mediate this dispute.

k.      Any other factors that are material to a determination that the amount of the agreed-upon penalties is fair.

3.      Any request to approve an award of attorney fees and costs may be included as part of the motion to approve PAGA settlement and shall be supported by argument and evidence of the total amount of time spent by counsel, a detailed description of the work actually performed and the time charged for each task performed, the reasonableness of the fees charged and a detailed description of the costs actually incurred.

4.      Any release of claims shall bind ONLY the named representative plaintiff.


Sharon J. Waters, Judge of the Superior Court

SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE
4050 Main Street - 2nd Floor
Riverside, CA  92501
www.riverside.courts.ca.gov

CLERK'S CERTIFICATE OF MAILING

LAWRENCE J PECK

vs.                              CASE NO. RIC1411184

SWIFT TRANSPORTATION CO ARIZONA LLC

TO:   LAW OFFICE OF NEAL J FIALKOW INC
      215 NORTH MARENGO AVE
      THIRD FLOOR
      PASADENA CA 91101

I certify that I am currently employed by the Superior Court of California, County of Riverside and I am not a party to this action or proceeding. In my capacity, I am familiar with the practices and procedures used in connection with the mailing of correspondence. Such correspondence is deposited in the outgoing mail of the Superior Court. Outgoing mail is delivered to and mailed by the United States Postal Service, postage prepaid, the same day in the ordinary course of business. I certify that I served a copy of the attached Case management Order on this date, by depositing said copy as stated above.

Court Executive Officer/Clerk

Dated: 05/30/17                  by: _____
                                      LETICIA HALL, Deputy Clerk

# EXHIBIT 3

1  NEAL J. FIALKOW (SBN 74385)
   nfialkow@pacbell.net
2  JAMES S. CAHILL (SBN 70353)
   jscahilllaw@aol.com
3  LAW OFFICE OF NEAL J. FIALKOW, INC.
   215 N. Marengo Ave., 3rd Floor
4  Pasadena, CA 91101
   Telephone:   (626) 584-6060
5  Facsimile:   (626) 584-2950

6
   Attorney for Plaintiff, Lawrence Peck, as an individual,
7  for himself, and on behalf of all others similarly situated

8            SUPERIOR COURT OF CALIFORNIA

9            FOR THE COUNTY OF RIVERSIDE

10 LAWRENCE J. PECK, an individual and on        Case No. RIC1411184
11 behalf of all other similarly aggrieved
   employees,                                    *[For All Purposes Assigned to Hon.*
12                                               *Judge Sharon J. Waters, Dept. 10]*

13                                               PLAINTIFF'S NOTICE OF MOTION AND
                                                 MOTION (1)TO COMPEL FURTHER
                                                 RESPONSES TO SPECIAL
14            Plaintiff,                          INTERROGATORIES (SET ONE)
                                                 AGAINST DEFENDANT AND (2) FOR
15            vs.                                 ORDER AWARDING MONETARY
                                                 SANCTIONS AGAINST DEFENDANT AND
16                                               ITS LAWYERS IN THE SUM OF $6,432.50;
                                                 MEMORANDUM OF POINTS AND
17 SWIFT TRANSPORTATION CO. ARIZONA,             AUTHORITIES; AND DECLARATIONS OF
   LLC  and DOES 1 through 30, inclusive,        NEAL J. FIALKOW AND JAMES S.
18                                               CAHILL WITH EXHIBITS

19            Defendants.                         Reservation No.: RES70062
                                                 Hearing:      September 11, 2017
20                                               Time:         8:30 a.m.
                                                 Dept.:        10
21
                                                 Complaint Filed: November 20, 2014
22                                               FAC Filed:       December 3, 2014
                                                 Trial Date:      August 17, 2018
23

24
                                                 By Fax
25

26

27 ─────────────────────────────────────────────────────────────────
       PLAINTIFF'S NOTICE OF MOTION (1) TO COMPEL FURTHER RESPONSES TO SPECIAL
28 INTERROGATORIES (SET ONE) AGAINST DEFENDANT AND (2) FOR ORDER AWARDING MONETARY
   SANCTIONS AGAINST DEFENDANT AND ITS LAWYERS IN THE SUM OF $6,432.50;  MEMORANDUM OF
   POINTS AND AUTHORITES; AND DECLARATIONS OF NEAL J. FIALKOW AND JAMES S. CAHILL WITH
                                      EXHIBITS

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

AUG 08 2017

M. Criel

# EXHIBIT 4

1 | NEAL J. FIALKOW (SBN 74385)
nfialkow@pacbell.net
2 | JAMES S. CAHILL (SBN 70353)
jscahilllaw@aol.com
3 | LAW OFFICE OF NEAL J. FIALKOW, INC.
215 N. Marengo Ave., 3rd Floor
4 | Pasadena, CA 91101
Telephone:   (626) 584-6060
5 | Facsimile:   (626) 584-2950

6

7 | Attorney for Plaintiff, Lawrence Peck, as an individual,
for himself, and on behalf of all others similarly situated

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

AUG 21 2017

E. Rodriguez

8 |                **SUPERIOR COURT OF CALIFORNIA**

9 |              **FOR THE COUNTY OF RIVERSIDE**

10 | LAWRENCE J. PECK, an individual and on
11 | behalf of all other similarly aggrieved
employees,
12 |

13 |

14 |               Plaintiff,

15 |       vs.

16 |

17 | SWIFT TRANSPORTATION CO. ARIZONA,
LLC  and DOES 1 through 30, inclusive,

18 |

19 |       Defendants.

20 |

21 |

22 |

23 |

24 |

Case No. RIC1411184

*[For All Purposes Assigned to Hon.
Judge Sharon J. Waters, Dept. 10]*

**PLAINTIFF'S NOTICE OF MOTION AND
MOTION (1)TO COMPEL PRODUCTION
OF DOCUMENTS AT DEPOSITION
AGAINST DEFENDANT AND (2) FOR
ORDER AWARDING MONETARY
SANCTIONS AGAINST DEFENDANT AND
ITS LAWYERS IN T HE SUM OF
$10,462.50; MEMORANDUM OF POINTS
AND AUTHORITIES; AND
DECLARATIONS OF NEAL J. FIALKOW
AND JAMES S. CAHILL WITH EXHIBITS**

**[CONCURRENTLY FILED WITH
PLAINTIFF'S SEPARATE STATEMENT]**

**Reservation No.: RES70419**
Hearing:      September 19, 2017
Time:         8:30 a.m.
Dept.:        10

Complaint Filed: November 20, 2014
FAC Filed:      December 3, 2014
Trial Date:     August 17, 2018

25 |

26 |

27 |

28 | PLAINTIFF'S NOTICE OF MOTION AND MOTION (1) TO COMPEL PRODUCTION OF DOCUMENTS AT
DEPOSITION AGAINST DEFENDANT AND (2) FOR ORDER AWARDING MONETARY SANCTIONS AGAINST
DEFENDANT AND ITS LAWYERS IN THE SUM OF $10,462.50; MEMORANDUM OF POINTS AUTHORITIES;
AND DECLARATIONS OF NEAL J. FIALKOW AND JAMES S. CAHILL WITH EXHIBITS

# EXHIBIT 5

**NEAL J. FIALKOW**
ATTORNEY AT LAW
A PROFESSIONAL LAW CORPORATION
215 NORTH MARENGO AVENUE, 3RD FLOOR
**PASADENA, CALIFORNIA 91101**
(626) 584-6060
FAX (626) 584-2950

September 1, 2017

**SENT VIA EMAIL AND U.S. MAIL**

Robert Mussig, Esq.
Sheppard, Mullin, Richter & Hampton LLP
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422

Re:  ***Peck v. Swift Transportation Co. Arizona, LLC***
**Riverside County Superior Court, Case No. RIC1411184**

Dear Robert:

As you know, Swift's employee Sarah Koogle's deposition was set for September 4th to be taken in Phoenix, Arizona at 9:00 a.m. This will confirm that Swift will not be producing Sarah Koogle at said date and time given that the matter has been removed to Federal Court and the state action has been automatically stayed.

Very Truly Yours,

Neal J. Fialkow

CC: James S. Cahill, Esq., Paul S. Cowie, Esq.

# EXHIBIT 6

1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   PAUL S. COWIE, Cal. Bar No. 250131
2  pcowie@sheppardmullin.com
   379 Lytton Ave.
3  Palo Alto, California 94301
   Telephone: 650.815.2600
4  Facsimile: 650.815.2601

5  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   ROBERT MUSSIG, Cal. Bar No. 240369
6  rmussig@sheppardmullin.com
   HILARY A. HABIB, Cal. Bar No. 293431
7  hhabib@sheppardmullin.com
   333 South Hope Street, 43rd Floor
8  Los Angeles, California 90071-1422
   Telephone: 213.620.1780
9  Facsimile: 213.620.1398

   Attorneys for Defendant
10 SWIFT TRANSPORTATION CO. OF ARIZONA,
   LLC
11

12             SUPERIOR COURT OF THE STATE OF CALIFORNIA

13                     FOR THE COUNTY OF RIVERSIDE

14 LAWRENCE J. PECK, an individual and on       Case No. RIC 1411184
   behalf of all other similarly aggrieved
15 employees,                                   Hon. Sharon J. Waters
                        Plaintiff,
16                                              DEFENDANT SWIFT
            v.                                  TRANSPORTATION CO. OF ARIZONA,
17                                              LLC'S RESPONSES TO PLAINTIFF'S
   SWIFT TRANSPORTATION CO.                     SPECIAL INTERROGATORIES, SET
18 ARIZONA, LLC and DOES 1 through 30,          ONE
   inclusive,
19                                              Complaint Filed: November 20, 2014
                        Defendants.             FAC Filed: December 3, 2014
20                                              Trial Date: None Set
21

22 PROPOUNDING PARTY:        LAWRENCE J. PECK

23 RESPONDING PARTY:         SWIFT TRANSPORTATION CO. OF ARIZONA, LLC

24 SET NO.:                  ONE

25 NOS.:                     1-13

26

27

28
                                      -1-
   SMRH:483031155.1        DEFENDANT'S RESPONSES TO SPECIAL INTERROGATORIES, SET ONE

Defendant Swift Transportation Co. of Arizona, LLC hereby responds to the

Special Interrogatories, Set One, served by Plaintiff Lawrence J. Peck as follows:

## I.

## PRELIMINARY STATEMENT

These responses are made solely for the purposes of, and in relation to, this lawsuit. Each response is subject to all appropriate objections that would require the exclusion of any information produced at the time of trial, including, but not limited to, objections as to competency, relevancy, confidentiality, and admissibility.  All such objections and grounds therefore are reserved and may be made at the time of trial.

Defendant has not yet completed its investigation of the facts relating to this case, has not fully completed discovery in this matter, and has not fully completed preparation for trial. Accordingly, all of the responses below are based only on such information that is presently available to and specifically known to Defendant at this time.  Furthermore, these responses disclose only those contentions that presently occur to Defendant.

It is anticipated that further discovery, independent investigation, legal research and analysis will supply additional facts, add meaning to the known facts, and establish entirely new factual and legal contentions, all of which may lead to substantial additions to, changes in, and variations from the responses set forth below.  These responses are given without prejudice to Defendant's right to produce evidence of any subsequently discovered facts or documents or other tangible things that Defendant may later discover or recall.  Accordingly, Defendant hereby reserves the right to add to, modify, or otherwise change or amend the responses below as additional facts are ascertained, analysis and contentions are made, and legal research is completed.

The responses below are made in a good faith effort to supply as much factual information and specification of legal contentions as is presently known, but should in no way be to the prejudice of Defendant in relation to further discovery, research or legal analysis.

No incidental or implied admissions are intended by the responses herein.  The fact that Defendant answered or objected to any interrogatory should not be taken as an admission that

SMRH:483051155.1

1   Defendant accepts or admits the existence of any "facts" set forth or assumed by such

2   interrogatory. The fact that Defendant has answered part or all of an interrogatory is not intended

3   to be, and should not be construed as, a waiver by Defendant of any part of any objection to such

4   interrogatory.

5            This preliminary statement is incorporated into each response below.

6                                                    II.

7                                    **GENERAL OBJECTIONS**

8            Each response below is subject to the following general objections. These general

9   objections form a part of each response and are set forth here to avoid duplication and repetition

10  caused by restating them in each response. These general objections may be specifically

11  interposed for the purpose of clarity in response to an individual interrogatory. However, the

12  failure to specifically incorporate any general objection in a particular response should not be

13  construed as a waiver of the objection.

14           1.      **SCOPE**: Defendant objects to each interrogatory to the extent it is vague,

15  overly broad, oppressive, unintelligible, harassing or vexatious; imposes undue burden or expense;

16  seeks information not apparently relevant to the claims or defenses of any party nor likely to lead

17  to the discovery of admissible evidence; and/or seeks information not within Defendant's

18  possession, custody or control.

19           2.      **PRIVILEGE**: Defendant objects to each interrogatory to the extent it calls

20  for information protected by the attorney-client privilege, the work product doctrine or any other

21  privilege or protection from discovery.

22           3.      **UNDULY BURDENSOME**: Defendant objects to each interrogatory to

23  the extent it seeks to impose burdens and obligations not contemplated by or exceeding the

24  requirements of the California Code of Civil Procedure.

25           4.      **CONFIDENTIAL INFORMATION**: Defendant objects to each

26  interrogatory to the extent it seeks disclosure of: (1) Information that would violate the privacy

27  rights of individuals; or (2) confidential business or commercial information, trade secrets, and/or

28  proprietary information, including financial information, of Defendant and/or third parties.

These general objections are incorporated into each response below.

## RESPONSE TO SPECIAL INTERROGATORIES

### SPECIAL INTERROGATORY NO. 1:

For the period of October 18, 2013 through December 31, 2013 what were the number of Swift non-exempt truck drivers that were compensated with a mileage based pay plan whose earning statements showed them to have a California address and that California state tax was being deducted.

### RESPONSE TO SPECIAL INTERROGATORY NO. 1:

By this reference, Defendant incorporates its Preliminary Statement and General Objections set forth above. Defendant objects to this interrogatory on the ground that it is overbroad in scope, unduly burdensome, oppressive and harassing. Defendant objects to this interrogatory on the ground that it is vague and ambiguous. Defendant objects to the term "non-exempt." All or nearly all of Swift's truck drivers are exempt from overtime under both state and federal law. In a good faith effort to provide information, Swift will interpret this Interrogatory as not containing the term "non-exempt."

Subject to and without waiving the forgoing objections, Defendant responds as follows: 1,458 drivers.

### SPECIAL INTERROGATORY NO. 2:

For the period of October 18, 2013 through December 31, 2013 what were the total number of earning statements issued by Swift for all Swift non-exempt truck drivers that were compensated with a mileage based pay plan whose earning statements showed them to have a California address and that California state tax was being deducted.

### RESPONSE TO SPECIAL INTERROGATORY NO. 2:

By this reference, Defendant incorporates its Preliminary Statement and General Objections set forth above. Defendant objects to this interrogatory on the ground that it is overbroad in scope, unduly burdensome, oppressive and harassing. Defendant objects to this interrogatory on the ground that it is vague and ambiguous. Defendant objects to the term "non-exempt." All or nearly all of Swift's truck drivers are exempt from overtime under both state and

1  federal law. In a good faith effort to provide information, Swift will interpret this Interrogatory as

2  not containing the term "non-exempt."

3       Subject to and without waiving the forgoing objections, Defendant responds as follows:

4  Approximately 19,275 earning statements.

5  **SPECIAL INTERROGATORY NO. 3:**

6       For the period of January 1, 2014 through December 31, 2014 what were the number of

7  Swift non-exempt truck drivers that were compensated with a mileage based pay plan whose

8  earning statements showed them to have a California address and that California state tax was

9  being deducted.

10 **RESPONSE TO SPECIAL INTERROGATORY NO. 3:**

11      By this reference, Defendant incorporates its Preliminary Statement and General

12 Objections set forth above. Defendant objects to this interrogatory on the ground that it is

13 overbroad in scope, unduly burdensome, oppressive and harassing. Defendant objects to this

14 interrogatory on the ground that it is vague and ambiguous. Defendant objects to the term "non-

15 exempt." All or nearly all of Swift's truck drivers are exempt from overtime under both state and

16 federal law. In a good faith effort to provide information, Swift will interpret this Interrogatory as

17 not containing the term "non-exempt."

18      Subject to and without waiving the forgoing objections, Defendant responds as follows:

19 3,610 drivers.

20 **SPECIAL INTERROGATORY NO. 4:**

21      For the period January 1, 2014 through December 31, 2014 what were the total number of

22 earning statements issued by Swift for all Swift non-exempt truck drivers that were compensated

23 with a mileage based pay plan whose earning statements showed them to have a California address

24 and that California state tax was being deducted.

25 **RESPONSE TO SPECIAL INTERROGATORY NO. 4:**

26      By this reference, Defendant incorporates its Preliminary Statement and General

27 Objections set forth above. Defendant objects to this interrogatory on the ground that it is

28 overbroad in scope, unduly burdensome, oppressive and harassing. Defendant objects to this

DEFENDANT'S RESPONSES TO SPECIAL INTERROGATORIES, SET ONE

SMRH:483031155.1

1  interrogatory on the ground that it is vague and ambiguous. Defendant objects to the term "non-

2  exempt." All or nearly all of Swift's truck drivers are exempt from overtime under both state and

3  federal law. In a good faith effort to provide information, Swift will interpret this Interrogatory as

4  not containing the term "non-exempt."

5       Subject to and without waiving the forgoing objections, Defendant responds as follows:

6  Approximately 124,922 earning statements.

7  **SPECIAL INTERROGATORY NO. 5:**

8       For the period of January 1, 2015 through December 31, 2015 what were the number of

9  Swift non-exempt truck drivers that were compensated with a mileage based pay plan whose

10  earning statements showed them to have a California address and that California state tax was

11  being deducted.

12  **RESPONSE TO SPECIAL INTERROGATORY NO. 5:**

13       By this reference, Defendant incorporates its Preliminary Statement and General

14  Objections set forth above. Defendant objects to this interrogatory on the ground that it is

15  overbroad in scope, unduly burdensome, oppressive and harassing. Defendant objects to this

16  interrogatory on the ground that it is vague and ambiguous. Defendant objects to the term "non-

17  exempt." All or nearly all of Swift's truck drivers are exempt from overtime under both state and

18  federal law. In a good faith effort to provide information, Swift will interpret this Interrogatory as

19  not containing the term "non-exempt."

20       Subject to and without waiving the forgoing objections, Defendant responds as follows:

21  3,716 drivers.

22  **SPECIAL INTERROGATORY NO. 6:**

23       For the period of January 1, 2015 through December 31, 2015 what were the total number

24  of earning statements issued by Swift for all Swift non-exempt truck drivers that were

25  compensated with a mileage based pay plan whose earning statement showed them to have a

26  California address and that California state tax was being deducted.

27

28

SMRH 483037355.1              DEFENDANT'S RESPONSES TO SPECIAL INTERROGATORIES, SET ONE

**RESPONSE TO SPECIAL INTERROGATORY NO. 6:**

By this reference, Defendant incorporates its Preliminary Statement and General Objections set forth above. Defendant objects to this interrogatory on the ground that it is overbroad in scope, unduly burdensome, oppressive and harassing. Defendant objects to this interrogatory on the ground that it is vague and ambiguous. Defendant objects to the term "non-exempt." All or nearly all of Swift's truck drivers are exempt from overtime under both state and federal law. In a good faith effort to provide information, Swift will interpret this Interrogatory as not containing the term "non-exempt."

Subject to and without waiving the forgoing objections, Defendant responds as follows: Approximately 133,396 earning statements.

**SPECIAL INTERROGATORY NO. 7:**

For the period of January 1, 2016 through December 31, 2016 what were the number of Swift non-exempt truck drivers that were compensated with a mileage based pay plan whose earning statements showed them to have a California address and that California state tax was being deducted.

**RESPONSE TO SPECIAL INTERROGATORY NO. 7:**

By this reference, Defendant incorporates its Preliminary Statement and General Objections set forth above. Defendant objects to this interrogatory on the ground that it is overbroad in scope, unduly burdensome, oppressive and harassing. Defendant objects to this interrogatory on the ground that it is vague and ambiguous. Defendant objects to the term "non-exempt." All or nearly all of Swift's truck drivers are exempt from overtime under both state and federal law. In a good faith effort to provide information, Swift will interpret this Interrogatory as not containing the term "non-exempt."

Subject to and without waiving the forgoing objections, Defendant responds as follows: 3,625 drivers.

**SPECIAL INTERROGATORY NO. 8:**

For the period of January 1, 2016 through December 31, 2016 what were the total number of earning statements issued by Swift for all Swift non-exempt truck drivers that were

1  compensated with a mileage based pay plan whose earning statements showed them to have a

2  California address and that California state tax was being deducted.

3  **RESPONSE TO SPECIAL INTERROGATORY NO. 8:**

4      By this reference, Defendant incorporates its Preliminary Statement and General

5  Objections set forth above.  Defendant objects to this interrogatory on the ground that it is

6  overbroad in scope, unduly burdensome, oppressive and harassing.  Defendant objects to this

7  interrogatory on the ground that it is vague and ambiguous.  Defendant objects to the term "non-

8  exempt."  All or nearly all of Swift's truck drivers are exempt from overtime under both state and

9  federal law.  In a good faith effort to provide information, Swift will interpret this Interrogatory as

10  not containing the term "non-exempt."

11      Subject to and without waiving the forgoing objections, Defendant responds as follows:

12  Approximately 111,622 earning statements.

13  **SPECIAL INTERROGATORY NO. 9:**

14      For the period of January 1, 2017 through the date of your verified response what were the

15  number of Swift non-exempt truck drivers that were compensated with a mileage based pay plan

16  whose earning statements showed them to have a California address and that California state tax

17  was being deducted.

18  **RESPONSE TO SPECIAL INTERROGATORY NO. 9:**

19      By this reference, Defendant incorporates its Preliminary Statement and General

20  Objections set forth above.  Defendant objects to this interrogatory on the ground that it is

21  overbroad in scope, unduly burdensome, oppressive and harassing.  Defendant objects to this

22  interrogatory on the ground that it is vague and ambiguous.  Defendant objects to the term "non-

23  exempt."  All or nearly all of Swift's truck drivers are exempt from overtime under both state and

24  federal law.  In a good faith effort to provide information, Swift will interpret this Interrogatory as

25  not containing the term "non-exempt."

26

27

28

-8-
SMRH:483031155.1                    DEFENDANT'S RESPONSES TO SPECIAL INTERROGATORIES, SET ONE

1    Subject to and without waiving the forgoing objections, Defendant responds as follows:

2  As of May 2017, 1,916 drivers.

3  **SPECIAL INTERROGATORY NO. 10:**

4    For the period of January 1, 2017 through the date of your verified response what were the

5  total number of earning statements issued by Swift for all Swift non-exempt truck drivers that

6  were compensated with a mileage based pay plan whose earning statements showed them to have

7  a California address and that California state tax was being deducted.

8  **RESPONSE TO SPECIAL INTERROGATORY NO. 10:**

9    By this reference, Defendant incorporates its Preliminary Statement and General

10  Objections set forth above. Defendant objects to this interrogatory on the ground that it is

11  overbroad in scope, unduly burdensome, oppressive and harassing. Defendant objects to this

12  interrogatory on the ground that it is vague and ambiguous. Defendant objects to the term "non-

13  exempt." All or nearly all of Swift's truck drivers are exempt from overtime under both state and

14  federal law. In a good faith effort to provide information, Swift will interpret this Interrogatory as

15  not containing the term "non-exempt."

16    Subject to and without waiving the forgoing objections, Defendant responds as follows:

17  As of May 2017, approximately 43,337 pay statements.

18  **SPECIAL INTERROGATORY NO. 11:**

19    As to each individual who worked for Swift as a Swift non-exempt truck driver that was

20  compensated with a mileage based pay plan whose earning statements showed them to have a

21  California address and that California state tax was being deducted. State their name, date of hire,

22  date of termination, and how many paystubs were issued to each such individual from October 18,

23  2013 to the date of your verified response.

24  **RESPONSE TO SPECIAL INTERROGATORY NO. 11:**

25    By this reference, Defendant incorporates its Preliminary Statement and General

26  Objections set forth above. Defendant objects to this interrogatory because it seeks information

27  protected from disclosure by privacy laws. Defendant objects to this interrogatory on the ground

28  that it is overbroad in scope, unduly burdensome, oppressive and harassing. Defendant objects to

-9-

1  this interrogatory on the ground that it is vague and ambiguous.  Defendant objects to this

2  interrogatory on the ground that it seeks information that is neither relevant nor reasonably

3  calculated to lead to the discovery of admissible evidence.  Defendant objects to the term "non-

4  exempt."  All or nearly all of Swift's truck drivers are exempt from overtime under both state and

5  federal law.

6  **SPECIAL INTERROGATORY NO. 12**:

7       State the name of each individual who participated in obtaining finding or providing any of

8  the information requested in any of the previous 11 interrogatories.

9  **RESPONSE TO SPECIAL INTERROGATORY NO. 12**:

10       By this reference, Defendant incorporates its Preliminary Statement and General

11  Objections set forth above.  Defendant objects to this interrogatory on the ground that it seeks

12  information that is neither relevant nor reasonably calculated to lead to the discovery of admissible

13  evidence.

14       Subject to and without waiving the forgoing objections, Defendant responds as follows:

15  Robin Rohwer was responsible for compiling the information provided in Interrogatory Nos. 1

16  through 10 above.

17  **SPECIAL INTERROGATORY NO. 13**:

18       For each name you have provided in response to interrogatory # 12 please state for each

19  named individual the specifics of what they did and what records and data bases(s) they used.

20  **RESPONSE TO SPECIAL INTERROGATORY NO. 13**:

21       By this reference, Defendant incorporates its Preliminary Statement and General

22  Objections set forth above.  Defendant objects to this interrogatory on the ground that it seeks

23  information that is neither relevant nor reasonably calculated to lead to the discovery of admissible

24  evidence.  Defendant objects to this interrogatory on the ground that it seeks to invade the

25  attorney-client privilege and/or the attorney work product doctrine.

26       Subject to and without waiving the forgoing objections, Defendant responds as follows:

27  The information was obtained by accessing and recalling information from employee databases

28  maintained by Swift in the ordinary course of business.

-10-

SMRH:483031155.1

Dated:  May 30, 2017

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____

PAUL S. COWIE
ROBERT MUSSIG
HILARY A. HABIB
Attorneys For Defendant
SWIFT TRANSPORTATION CO. OF ARIZONA,
LLC

<u>VERIFICATION</u>

<u>STATE OF CALIFORNIA, COUNTY OF LOS ANGELES</u>

I have read the foregoing **DEFENDANT SWIFT TRANSPORTATION CO. OF ARIZONA, LLC'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE** and know its contents.

I am the Director of Payroll for Swift Transportation Co. of Arizona, LLC, a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason.  I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

Executed on May 30 2017, at Phoenix, Arizona.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Robin Rohwer
Name of Signatory

Signature

-12-

DEFENDANT'S RESPONSES TO SPECIAL INTERROGATORIES, SET ONE

SMRH:483031155.1

### PROOF OF SERVICE

#### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 333 South Hope Street, 43rd Floor, Los Angeles, CA 90071-1422.

On May 30, 2017, I served true copies of the following document(s) described as **DEFENDANT USA WASTE OF CALIFORNIA, INC.'S RESPONSE TO DONALD TUMBLIN'S SPECIAL INTERROGATORIES, SET FOUR** on the interested parties in this action as follows:

Neal J. Fialkow
James S. Cahill
Law Offices of Neal J. Fialkow, Inc.
215 North Marengo Avenue, Third Floor
Pasadena, CA 91101

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the firm's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on May 30, 2017, at Los Angeles, California.

Gina Lo Monaco

SMRH:483436832.1

-1-

# EXHIBIT 7

Atkinson-Baker Court Reporters
www.depo.com

1          SUPERIOR COURT OF CALIFORNIA

2            FOR THE COUNTY OF RIVERSIDE

3

   LAWRENCE J. PECK, an individual      )
4  and on behalf of all similarly       )
   aggrieved employees,                 )
5                                        )
                       Plaintiff,        )
6                                        )
   vs.                                   )  Case No.
7                                        )  RIC 1411184
   SWIFT TRANSPORTATION CO.              )
8  ARIZONA, LLC and DOES 1 through       )
   30 inclusive,                         )
9                                        )
                       Defendants.       )
10                                       )

11

12

              DEPOSITION OF JAMES FITZSIMMONS
13

14               Phoenix, Arizona

15               November 30, 2016

16

17

18

19

20

21
   ATKINSON-BAKER, INC.
22 COURT REPORTERS
   (800) 288-3376
23 www.depo.com

24 REPORTED BY:    CHARLOTTE LACEY, RPR, CR NO. 50859

25 FILE NO.:       AA07A03

Atkinson-Baker Court Reporters
www.depo.com

1    Q.   And are there some line-haul drivers that work

2    just intrastate and some that are interstate?

3    A.   Mostly would be interstate.  There could be

4    exceptions where a line-haul driver could possibly be

5    intrastate.

6    Q.   Okay.  And all of my questions to this category

7    of different categorizations of drivers is for the

8    California market.  You understand that, right?

9    A.   Yes.

10   Q.   Okay.  So we have a line-haul driver that could

11   be intrastate, could be interstate, right?

12   A.   Right.

13   Q.   But mostly are interstate --

14   A.   Correct.

15   Q.   -- true?

16        And are all line-haul drivers employees?

17   A.   No.

18   Q.   All right.  And if you're not an employee, what

19   would you be?  An owner-operator?

20   A.   Correct.

21   Q.   Okay.  Now, my lawsuit is only for nonexempt

22   employees, so that would not include the owner-operators.

23   Am I correct?

24   A.   No.

25        MR. MUSSIG:  Calls for a legal conclusion.

Atkinson-Baker Court Reporters
www.depo.com

1                    REPORTER'S CERTIFICATE

2

3          I, CHARLOTTE LACEY, RPR, CR No. 50859, Certified

4    Reporter, certify:

5          That the foregoing proceedings were taken before me

6    at the time and place therein set forth, at which time the

7    witness was put under oath by me;

8          That the testimony of the witness, the questions

9    propounded, and all objections and statements made at the

10   time of the examination were recorded stenographically by

11   me and were thereafter transcribed;

12         That the foregoing is a true and correct transcript

13   of my shorthand notes so taken.

14         I further certify that I am not a relative or

15   employee of any attorney of the parties, nor financially

16   interested in the action.

17         I declare under penalty of perjury under the laws of

18   Arizona that the foregoing is true and correct.

19         Dated this _____ day of _____ 2016.

20

21                        _____

                          CHARLOTTE LACEY, RPR
22                        Certified Reporter No. 50859

23

     _____
24   For Atkinson-Baker, Inc.
     Registered Reporting Firm No. R-1029
25

                                                              205

James Fitzsimmons
November 30, 2016

# EXHIBIT 8

Atkinson-Baker Court Reporters
www.depo.com

1          SUPERIOR COURT OF CALIFORNIA

2          IN AND FOR THE COUNTY OF RIVERSIDE

3   ------------------------------------X
    LAWRENCE J. PECK, an individual and
4   on behalf of all other similarly
    aggrieved employees,
5
                Plaintiffs,
6
           vs.                          No. RIC 1411184
7
    SWIFT TRANSPORTATION CO. ARIZONA,
8   LLC and DOES 1 through 30, inclusive,
9              Defendants.
    ------------------------------------X
10

11

12   DEPOSITION OF SWIFT TRANSPORTATION CO. ARIZONA, LLC, PMQ,
                   JAMES LEE FITZSIMMONS
13
                      VOLUME I
14
                    Phoenix, Arizona
15                   July 26, 2017
                     10:00 a.m.
16

17

18
    ATKINSON-BAKER, INC., COURT REPORTERS
19   Arizona Registered Firm R1029
    1.800.288.3376  www.depo.com
20

21   REPORTED BY:
    LISA A. NANCE, RPR, CR (AZ)
22   Registered Professional Reporter
    Certified Reporter
23   Certificate No. 50349

24   Job No. AB07B82

25

                                                          1

Atkinson-Baker Court Reporters
www.depo.com

1    number could come out different, correct?

2        A.   What number?

3        Q.   The amount of compensation.

4        A.   The amount of the total compensation?

5        Q.   For that trip.

6        A.   Yes.

7        Q.   And that would be dependent upon what happens

8    on the trip, correct?

9        A.   Yes.

10       Q.   So, for example, you indicate it's the tasks

11   necessary to complete the trip, correct?

12       A.   Correct.

13       Q.   So let's say on a pre-trip, what does a

14   pre-trip normally take, 10 minutes?  Normal --

15       A.   Not normal, no.

16       Q.   How long would you say a pre-trip normally

17   takes?

18       A.   It would depend on --

19       Q.   Pre-trip inspection.

20       A.   It would depend on the driver.

21       Q.   What is an average time?

22       A.   Two minutes.

23       Q.   Okay.  What would you say the range is from

24   driver to driver, if you were going to give a high and

25   low, that you would consider within the ballpark and not

74

1    STATE OF ARIZONA        )

2    COUNTY OF MARICOPA      ) SS.

3        BE IT KNOWN that the foregoing proceedings were

4    taken before me; that the witness before testifying was

5    duly sworn by me to testify to the whole truth; that the

6    foregoing pages are a full, true, and accurate transcript

7    of the proceedings, all done to the best of my skill and

8    ability; that the proceedings were taken down by me in

9    shorthand and thereafter reduced to print under my

10   direction.

11       I CERTIFY that I am in no way related to any of the

12   parties hereto nor am I in any way interested in the

13   outcome hereof.

14       Review and signature was requested.

15       I CERTIFY that I have complied with the ethical

16   obligations set forth in ACJA 7-206(F)(3) and ACJA 7-206

17   J(1)(g)(1) and (2).

18       Dated at Phoenix, Arizona, _____, 2017.

19   _____
     LISA A. NANCE, RPR, CR
20   Certified Reporter; Arizona CR No. _____

21              *    *    *    *    *    *    *

22       I CERTIFY that ATKINSON-BAKER, INC., has complied
     with the ethical obligations set forth in ACJA 7-206
23   (J)(1)(g)(1) through (6).
     _____
24   ATKINSON-BAKER, INC.
     Arizona Registered Reporting Firm,  Arizona RRF No. 1029
25

# **EXHIBIT 9**

1 | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
     A Limited Liability Partnership
2 |    Including Professional Corporations
   | RONALD J. HOLLAND, Cal. Bar No. 148687
3 | rholland@sheppardmullin.com
   | Four Embarcadero Center, 17th Floor
4 | San Francisco, California 94111-4109
   | Telephone: 415.434.9100
5 | Facsimile:  415.434.3947

6 | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   | PAUL S. COWIE, Cal. Bar No. 250131
7 | pcowie@sheppardmullin.com
   | 379 Lytton Ave.
8 | Palo Alto, California 94301
   | Telephone:  650.815.2600
9 | Facsimile:  650.815.2601

10 | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    | ROBERT MUSSIG, Cal. Bar No. 240369
11 | rmussig@sheppardmullin.com
    | 333 South Hope Street, 43rd Floor
12 | Los Angeles, California 90071-1422
    | Telephone:  213.620.1780
13 | Facsimile:   213.620.1398

14 |

   | Attorneys for Defendant SWIFT
15 | TRANSPORTATION CO. OF ARIZONA,
   | LLC
16 |

17 |            UNITED STATES DISTRICT COURT

18 |           CENTRAL DISTRICT OF CALIFORNIA

19 | LAWRENCE J. PECK, an individual,          | Case No.
   | appearing individually and on behalf of
20 | all others similarly situated,            | [Riverside Superior Court Case No. RIC
   |                                           | 1409181]
21 |           Plaintiffs,
   |                                           |
22 |                                           | **NOTICE OF REMOVAL OF
   |                                           | ACTION PURSUANT TO 28 U.S.C.
23 |       v.                                  | §§ 28 U.S.C. SECTIONS 1332(d),
   |                                           | 1441, AND 1446**
24 | SWIFT TRANSPORTATION CO.
   | ARIZONA, LLC and DOES 1 through          | **(CLASS ACTION FAIRNESS ACT)**
25 | 30, inclusive,
   |                                           |
26 |           Defendants.                     | [State Court Complaint Filed:
   |                                           | September 25. 2014]
27 |

28 |

NOTICE OF REMOVAL OF ACTION

1    TO THE CLERK OF THE UNITED STATES DISTRICT COURT

2  FOR THE CENTRAL DISTRICT OF CALIFORNIA:

3

4    Please take notice that Defendant SWIFT TRANSPORTATION CO.

5  OF ARIZONA, LLC, erroneously named as SWIFT TRANSPORTATION CO.

6  ARIZONA, LLC, hereby removes the matter of *Lawrence J. Peck v. Swift*

7  *Transportation Co. Arizona, LLC, et al.*, pending in the Superior Court of the State

8  of California in and for the County of Riverside, Case No. RIC 1409181, to the

9  United States District Court for the Central District of California pursuant to 28

10  U.S.C. §§ 1332(d), 1441(b), and 1446.

11

12    Removal is based on the Class Action Fairness Act ("CAFA"), 28

13  U.S.C. Sections 1332(d), 1441(b) and 1446, on the following grounds:

14

15    I.

16  **STATEMENT OF JURISDICTION UNDER THE CLASS ACTION**

17  **FAIRNESS ACT**

18    1.    On February 18, 2005, the Class Action Fairness Act ("CAFA"

19  or the "Act") was enacted.  In relevant part, the CAFA grants federal district courts

20  original jurisdiction over civil class action lawsuits filed under federal or state law in

21  which any member of a class of plaintiffs is a citizen of a state different from any

22  defendant, and where the matter in controversy exceeds $5,000,000, exclusive of

23  interest and costs.

24

25    2.    This Court has jurisdiction over this case under the Class Action

26  Fairness Act, 28 U.S.C. section 1332(d), and this case may be removed pursuant to

27  the provisions of 28 U.S.C. section 1441(a), in that it is a civil class action wherein:

28  1) the proposed class contains at least 100 members; 2) the defendant is not a state,

-1-

1   state official or other governmental entity; 3) the total amount in controversy for all

2   class members exceeds $5,000,000 and; 4) there is diversity between at least one

3   class member and one defendant.

4

5          3.      The CAFA's minimal diversity requirement is satisfied when: 1)

6   at least one plaintiff is a citizen of a state in which none of the defendants are

7   citizens, 2) at least one plaintiff is a citizen of a foreign state and one defendant is a

8   U.S. citizen, or 3) at least one plaintiff is a U.S. citizen and one defendant is a

9   citizen of a foreign state. *See* 28 U.S.C. § 1332(d).

10

11          4.      As set forth below, this case meets all of CAFA's requirements

12   for removal and is timely and properly removed by the filing of this Notice.

13

14                                          II.

15                          **STATUS OF PLEADINGS**

16          5.      On or about September 25, 2014, Plaintiff filed a Complaint in

17   the Superior Court of the State of California in and for the County of Riverside,

18   entitled *Lawrence J. Peck v. Swift Transportation Co. Arizona, LLC, et al.*, Case No.

19   RIC 1409181.  The Complaint is a purported class action.

20

21          6.      A copy of the Complaint, Summons, and Civil Case Cover Sheet

22   was served on Swift Transportation Co. of Arizona, LLC ("Swift" or "Defendant")

23   on September 26, 2014.  True and correct copies of the Summons, Complaint, Civil

24   Case Cover Sheet, Proof of Service, and all other pleadings, process, and orders

25   served on Defendant in this action are attached hereto, collectively, as Exhibit A.[1]

26

27   _____

[1]   Defendant asks the Court to take judicial notice of the exhibits attached to this Notice
28   of Removal, all of which are pleadings filed with or by other California courts.

1       7.    Plaintiff was employed by Defendant from March 14, 2013 until

2 December 17, 2013.  Declaration of Robin Rohwer ("Rohwer Decl."), ¶ 8.

3

4       8.    Plaintiff's Complaint asserts seven (7) causes of action: for (1)

5 Failure to pay minimum wages; (2) Failure to pay wages for hours worked; (3)

6 Failure to pay overtime; (4) Failure to timely pay final wages at termination; (5)

7 Failure to pay work-related expenses; (6) Failure to provide accurate employee

8 itemized wage statements; and (7) Violations of the California Unfair Competition

9 Laws.  Exhibit A.

10

11      9.    Defendant filed its Answer to Plaintiff's Complaint in Superior

12 Court on October 22, 2014, a copy of which is attached hereto as Exhibit B.

13

14     10.    Venue is proper in this Court pursuant to 28 U.S.C. sections

15 84(c), and 1391.

16

17                      III.

## 18 JURISDICTION PURSUANT TO THE CLASS ACTION FAIRNESS ACT IS

## 19 SATISFIED

20     11.    Pursuant to Section 4 of the Class Action Fairness Act of 2005

21 ("CAFA" or the "Act"), 28 U.S.C. section 1332(d)(2):

22

23          The district courts shall have original jurisdiction of any

24          civil action in which the matter in controversy exceeds the sum or value of \$5,000,000, exclusive of interest and

25          costs, and is a class action in which –

26          (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

27

28

SMRH:433818274.6                                      NOTICE OF REMOVAL OF ACTION

1           12.    This Court has jurisdiction over this action pursuant to CAFA,

2    28 U.S.C. section 1332(d), and this case may be removed by Defendant pursuant to

3    the provisions of 28 U.S.C. section 1441(a), in that it is a civil class action wherein:

4    (1) the proposed class contains at least 100 members; (2) Defendant is not the state,

5    state official or other governmental entity; (3) the total amount in controversy

6    exceeds $5,000,000; and (4) there is diversity between at least one class member

7    and Defendant.  28 U.S.C. § 1332.

8

9           13.    Further, none of the exceptions contained in 28 U.S.C. section

10   1332(d)(3)-(5) are applicable here, as demonstrated below.

11

12   A.    **Minimum Diversity Of Citizenship Exists Here**

13          14.    Plaintiff's Complaint alleges that he is a resident of California.

14   Complaint, ¶ 1.  From March 14, 2013 to December 17, 2013, Plaintiff was

15   employed by Defendant as a driver assigned to Swift's Fontana terminal in

16   California.  Rohwer Decl., ¶ 8.   Further, based on a review of Plaintiff's personnel

17   file, Defendant is informed and believes that his last known residence address is

18   4132 Grandview Bld., Los Angeles, CA 90066. Rohwer Decl., ¶ 8.  Accordingly,

19   Plaintiff is a citizen of California for purposes of determining diversity. *See* 28

20   U.S.C. § 1332(a)(1) (an individual is a citizen of the state in which he or she is

21   domiciled); *see also State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th

22   Cir. 1994) (residence is *prima facie* evidence of domicile for purposes of

23   determining citizenship).

24

25          15.    For diversity purposes, a limited liability company is deemed to

26   be a citizen of the state of each of its members. *See, e.g., Cosgrove v. Bartolotta*,

27   150 F.3d 729, 731 (7th Cir. 1998); *Johnson v. Columbia Properties Anchorage, LP*,

28   437 F.3d 894, 899 (9th Cir. 2006).  Swift's sole member is Swift Transportation Co.,

1  LLC ("Swift Transportation").  In turn, Swift Transportation's sole member is Swift

2  Transportation Company ("Swift Co.").  Rohwer Decl., ¶ 4.

3

4       16.    As a corporation, Swift Co. is deemed to be a citizen of the state

5  in which it has been incorporated and the state where it has its principal place of

6  business.  28 U.S.C. § 1332(c)(1).

7

8       17.    In *Hertz Corp. v. Friend*, 130 S.Ct. 1181, 1192 (2010), the

9  Supreme Court clarified the definition of a corporation's "principal place of

10  business" and concluded that that "'principal place of business' is best read as

11  referring to the place where a corporation's officers direct, control, and coordinate

12  the corporation's activities."  The Supreme Court further clarified that, "in practice"

13  the principle place of business "should normally be the place where the corporation

14  maintains its headquarters—provided that the headquarters is the actual center of

15  direction, control, and coordination."  *Hertz Corp.*, 130 S.Ct. at 1192.

16

17       18.    Under the foregoing standard, Swift Co. is a citizen of Arizona

18  and Delaware for purposes of removal.  Swift Co. was incorporated in the State of

19  Delaware and maintains its corporate headquarters in Phoenix, Arizona.  Rohwer

20  Decl., ¶¶ 4 to 6.  Phoenix, Arizona is where the vast majority of the Swift Co.'s

21  corporate and executive officers are employed.  *Id.* at ¶ 5.  The vast majority of

22  Swift Co.'s administrative functions (including that of legal, payroll, human

23  resources, marketing, operations and planning), are conducted in Phoenix, Arizona.

24  *Id.*  And Phoenix, Arizona is also where the actual center of direction, control and

25  coordination for Swift Co. takes place.  *Id.*  This is well established by the facts that:

26  corporate headquarters is the actual center of direction, control and coordination of

27  all major human resources, payroll, legal and administrative functions; the

28  respective officers for these departments work in Phoenix, Arizona and are

1  responsible for developing policies and protocols for Swift Co.; and Swift Co.'s

2  Board of Directors meets in Phoenix, Arizona.  Rohwer Decl., ¶¶ 5 to 6.

3  Accordingly, Swift Co.'s principal place of business is in Arizona. *Id.*; *see also* 28

4  U.S.C. § 1332(c)(1); *Tosco Corp*, 236 F.3d at 500.

5

6           19.    Likewise, the facts establish that Swift and Swift

7  Transportation's principal places of business are located in Arizona as well.  As with

8  Swift Co., Swift and Swift Transportation maintain their corporate headquarters in

9  Phoenix, Arizona.  Rohwer Decl., ¶¶ 5 to 6.  The administrative functions crucial to

10  Swift's and Swift Transportation's day-to-day operations, including their payroll and

11  human resources functions, are conducted in their Phoenix headquarters, and most

12  corporate records are kept there as well. *Id.* at ¶ 6.  The corporate headquarters for

13  each entity is the actual center of direction, control and coordination of all major

14  human resources, payroll, legal and administrative functions.  *Id.*  The respective

15  heads for these departments for both entities work in Phoenix, Arizona and are

16  responsible for developing policies and protocols for Swift and Swift

17  Transportation. *Id.*  Moreover, their Boards of Directors meet in Phoenix, Arizona.

18  *Id.*  Lastly, their executives work in Phoenix, Arizona. *Id.*  Swift also employs more

19  individuals in the state of Arizona than it does in any other state, including

20  California, and although Swift's customers are located throughout the country in

21  nearly forty-eight states, in general, customers located in Illinois, Indiana and

22  Arizona generate more loads of freight than any other state (including California).

23  *Id.* at ¶¶ 11 to 12.  Accordingly, Swift's and Swift Transportation's principal places

24  of business are also in Arizona. *Id.* at ¶ 5.

25

26           20.    Pursuant to 28 U.S.C. Section 1441(a), the residence of fictitious

27  and unknown defendants should be disregarded for purposes of establishing removal

28  jurisdiction under 28 U.S.C. Section 1332. *Fristos v. Reynolds Metals Co.*, 615 F.2d

1   1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a

2   removal petition). *Soliman v. Philip Morris, Inc.*, 311 F.3d 966, 971 (9th Cir. 2002)

3   (citizenship of fictitious defendants disregarded for removal). Thus, the existence of

4   Doe defendants 1 through 30, does not deprive this Court of jurisdiction.

5

6        21.   In accordance with the foregoing, Plaintiff is a citizen of the

7   State of California, while Swift and Swift Transportation are citizens of the States of

8   Arizona and Delaware (which is the principal place of business and state of

9   incorporation, respectively, for Swift Co.). Thus, the minimum diversity

10  requirement under CAFA is satisfied.

11

12       22.   Venue is proper in this Court pursuant to 28 U.S.C. sections

13  84(a), and 1391.

14

15  **B.**    **The Amount In Controversy Exceeds The $5,000,000 Requirement**

16      **Under The CAFA**

17       23.   Without making an admission of liability or damages with

18  respect to any aspect of this case or to the proper legal test(s) applicable to

19  Plaintiff's allegations, the amount placed in controversy by Plaintiff's claims

20  exceeds the jurisdictional minimum of this Court. *Sanchez v. Monumental Life Ins.*

21  *Co.*, 102 F.3d 398, 404 (9th Cir. 1996); *Singer v. State Farm Mutual Auto. Ins. Co.*,

22  116 F.3d 373, 376 (9th Cir. 1997).

23

24       24.   Defendant is not obliged to "research, state, and prove the

25  plaintiff's claims for damages." *McCraw v. Lyons*, 863 F. Supp. 430, 434 (W.D.

26  Ky. 1994). Defendant can establish the amount in controversy by the allegations in

27  the Complaint, or by setting forth facts in the notice of removal that demonstrate

28  that the amount placed in controversy by Plaintiff exceeds the jurisdictional

1   minimum.  In other words, the District Court may consider whether it is facially

2   apparent from the Complaint that the jurisdictional amount is in controversy. *Singer*

3   *v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997); *Conrad Assoc.*

4   *v. Hartford Accident & Indem. Co.*, 994 F. Supp. 1196, 1198 (N.D. Cal. 1998).  In

5   addition to the contents of the removal petition, the Court considers "summary-

6   judgment-type evidence relevant to the amount in controversy at the time of

7   removal," such as affidavits or declarations. *Valdez v. Allstate Ins. Co.*, 372 F.3d

8   1115, 1117 (9th Cir. 2004); *Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373,

9   377 (9th Cir. 1997).

10

11          25.     In measuring the amount in controversy, a court must assume

12   that the allegations of the complaint are true and that a jury will return a verdict for

13   Plaintiff on all claims made in the complaint. *Kenneth Rothschild Trust v. Morgan*

14   *Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002).  The ultimate

15   inquiry is what amount is put "in controversy" by Plaintiff's complaint, not what

16   Defendants will actually owe. *Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982,

17   986 (S.D. Cal. 2005); *see also Scherer v. Equitable Life Assurance Society of the*

18   *United States*, 347 F.3d 394, 399 (2d Cir. 2003) (recognizing that the ultimate or

19   provable amount of damages is not what is considered when determining the amount

20   in controversy; rather, it is the amount put in controversy by the plaintiff's

21   complaint).

22

23          26.     Defendant provides the following calculations only to

24   demonstrate that the amount in controversy in this case exceeds the minimum

25   jurisdictional amount in controversy under the CAFA.  Defendant makes no

26   admission of any liability or damages with respect to any aspect of this case, or to

27   the proper legal test to be applied to Plaintiff's claims.  Nor does Defendant waive

28

SMRH:433818274.6

-8-

1    its right to ultimately contest the proper amount of damages due, if any, should

2    Plaintiff prevail with respect to any of his claims.

3

4          27.    This action has been styled as a class action pursuant to

5    California Code of Civil Procedure section 382. Complaint, ¶¶ 9 to 12. California

6    Code of Civil Procedure section 382 is a state statute authorizing an action to be

7    brought by one or more representative persons as a class action. Plaintiff brings this

8    action on behalf of himself and "All persons presently and formerly employed by

9    Defendants Swift and Does 1-30 in California as non-exempt hourly truck drivers

10    who performed services in California for any period of time within four years prior

11    to the initiation of this action through certification ('the Class [P]eriod')."

12    Complaint, ¶ 9. However, despite this statement as to hourly truck drivers, the body

13    of the Complaint makes apparent that Plaintiff actually seeks to represent all such

14    drivers paid on a mileage basis. For example, Plaintiff's Complaint states that "the

15    compensation for Plaintiff and the rest of the Class was calculated by Defendants on

16    a piece rate basis, *i.e.,* by multiplying a pre-set mileage rate by the number of miles

17    in a truck trip." Complaint, ¶ 15. *See also* Complaint, ¶¶ 10(c)(ii) (explaining that

18    common questions of fact or law predominate this action, including "whether

19    Defendants' practice of paying Plaintiff and the rest of the class on a piece rate

20    basis, *i.e.*, per mile, without providing additional compensation for non-driving tasks

21    violates the California Labor Code and applicable IWC Wage Order(s)); 13 to 18.

22

23          28.    The Act authorizes the removal of class actions in which, among

24    the other factors mentioned above, *the aggregate* amount in controversy for all class

25    members exceeds five million dollars ($5,000,000.00). *See* 28 U.S.C. § 1332(d).

26    The allegations in Plaintiff's Complaint and the claimed penalties greatly exceed the

27    jurisdictional minimum. By demonstrating that the actual amount in controversy

28    exceeds the threshold, Defendant does not concede the validity of Plaintiff's claims,

1   the legal bases for the damages calculations, or the likelihood that Plaintiff will

2   recover anything.

3

4          29.    Defendant provides the following calculations only to

5   demonstrate that the amount in controversy in this case easily exceeds the amount in

6   controversy requirement of the Act.  Defendant makes no admission of any liability

7   or damages with respect to any aspect of this case, nor do they endorse or concede

8   that the proffered methodology for such calculations passes muster.

9

10          30.    The statutes of limitation on the various claims asserted in the

11   Complaint are up to four years.  Business & Profession Code § 17208; *Deutsch v.*

12   *Turner Corp.*, 324 F 3d 692, 2003 U.S. App. LEXIS 3942 (2002), 192 ALR Fed

13   657; *Cazares v. Household Fin. Corp.*, 2005 U.S. Dist. LEXIS 39222 (2005).  Thus,

14   the putative class period, as alleged in the Complaint, is from September 25, 2010 to

15   present (the "Class Period").

16

17          31.    During the Class Period, Defendant employed over 9,500 drivers

18   assigned to terminals in California.  Rohwer Decl., ¶ 10.  Swift pays its drivers that

19   are assigned to terminals in California on a weekly basis.  *Id.* at ¶ 13.

20

21          32.    Plaintiff's First Cause of Action alleges that Defendant failed to

22   pay putative class members the state-mandated minimum wage.  Complaint, ¶¶ 13

23   to 18.  Plaintiff also seeks liquidated damages pursuant to Labor Code § 1194.2.

24   Prayer, pp. 14.  Because Plaintiff also asserts a claim under Business and

25   Professions Code section 17200, the statute of limitations for his minimum wage

26   claim increases from three years to four years.  Complaint, ¶¶ 39 to 45.

27

28

33.     In support of his minimum wage claim, Plaintiff alleges that because drivers were compensated based solely on a mileage system, drivers were not paid for pre-trip inspections and post-trip inspections, completion of paperwork (such as trip sheets and portions of bills of lading and scale tickets and lumping receipts), scanning paperwork, communications with Defendant, completion of Department of Transportation ("DOT") paperwork, weight inspections, truck fueling, servicing, and repairing, installing and removing tire chains, as well as waiting time in connection with loading and unloading trucks, layovers, and breakdowns.  Complaint, ¶ 15.

34.     Plaintiff's class allegations of unpaid wages for pre-trip and post-trip inspections ***alone*** meets the amount in controversy requirement.  DOT regulations mandate that drivers must conduct both a pre-trip and post-trip inspection at least once a day.  *See* 49 CFR 392.7 (explaining that a commercial vehicle should not be driven unless the driver is satisfied that the vehicle is in working order); 392.8; 392.9 ("[R]eexamination and any necessary adjustments [of the cargo] must be made whenever . . . [t]he driver makes a change of his/her duty status.").  Assuming such inspections take ten minutes each, and that drivers worked 5 days per week (or 260 days per year), the amount in controversy arising from the alleged failure to pay for pre- and post-trip inspections  is $6,864,000 ($8.00 (minimum wage for the majority of the Class Period), multiplied by 20 minutes (.33 hours), multiplied by 260 days, multiplied by four years (statute of limitations), multiplied by 2,500 average active drivers each day assigned to California terminals).  *See* Rohwer Decl., ¶ 10.  Given that drivers were paid substantially more than minimum wage the amount in controversy is actually substantially higher than these conservative calculations.  *See* Rohwer Decl., ¶ 9.

35.   In addition, Plaintiff seeks liquidated damages on his minimum wage claim pursuant to Labor Code Section 1194.2(a), which provides for liquidated damages in the amount equal to the wages allegedly unpaid.  Thus, Plaintiff places an additional 6,864,000 in controversy through his claim for liquidated damages.  Plaintiff's class allegations of unpaid pre-trip and post-trip inspections places an amount in controversy of $13,728,000.

36.   Plaintiff's Third Cause of Action alleges that Defendant failed to pay overtime wages.  Complaint, ¶¶ 23 to 25.  An employee is entitled to overtime wages for working over eight hours in one day or over forty hours in one work week.  Cal. Labor Code section 510.  Overtime is paid at no less than time and a half an employee's regular rate of pay.  *Id.*  Conservatively assuming that Defendant failed to pay drivers one hour of overtime per week, the amount in controversy for this cause of action would be $6,240,000 ($8.00 (minimum wage for the majority of the Class Period) x 1.5=$12 (overtime rate) x 52 weeks x 4 years (Class Period) x 2,500 average active drivers each day assigned to California terminals).  Therefore, the potential recovery of Plaintiff's Third Cause of Action for overtime demonstrates that the amount in controversy for this claim also exceeds the minimum jurisdictional amount.

37.   Furthermore, Plaintiff's Sixth Cause of Action asserts a cause of action for failure to comply with itemized employee wage statements pursuant to Labor Code section 226.  Complaint, ¶¶ 34 to 38.  Section 226(e) provides for damages for this alleged failure as follows:

> (e) An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent

pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000) and is entitled to an award of costs and reasonable attorney's fees.

38.     Assuming, for the purposes of removal only, that Plaintiff's allegation that the wage statements of each driver were deficient to be true, and the Court were to accept a claim by Plaintiff that the maximum penalty of $4,000 should be awarded to each putative class member, the amount in controversy for such penalties would be $38,000,000.  (9,500 drivers x $4,000 = $38,000,000.)  This potential recovery under Section 226 further serves to demonstrate that the amount in controversy in this case exceeds the minimum jurisdictional amount, permitting removal of this action.

39.     Plaintiff's claims for attorneys' fees must also be considered in determining whether the jurisdictional limit is met.  Complaint, Prayer at pp. 13-15. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (attorneys' fees recoverable by statute or contract are properly included in the amount in controversy.)  In California, where wage and hour class actions have settled prior to trial for millions of dollars, it is not uncommon for an attorneys' fee award to be twenty-five to forty percent of the settlement and, thus, in excess of $5,000,000.[2]

40.     In addition to the claims outlined above, Plaintiff also claims penalties pursuant to Labor Code § 203 in the amount of 30 days' pay for each

---

[2] *See Butler et. al. v. Countrywide Financial Corp.*, Los Angeles County Superior Court Case No. BC 268250 (April 2005) (preliminary approval given for $30 million settlement for alleged misclassification of approximately 400 account executives; attorney's fees award estimated at 25% or $7.5 million); see also *Bell v. Farmers Insurance Exchange*, 115 Cal.App.4th 715 (2005) (case went to trial as a class action in July 2001, resulting in a $90 million jury award for overtime pay, virtually all of which was upheld on appeal. Class consisted of approximately 9,400 insurance claims adjusters.  The court awarded attorney's fees totaling approximately $9.4 million.)

SMRH:433818274.6

1  driver who is no longer employed by Defendant. Complaint, ¶¶ 30-33. Of the

2  9,500 employee drivers assigned to a terminal in California during the Class Period,

3  approximately 7,000 are former employees. Rohwer Decl., ¶ 10. Assuming a

4  regular full time eight hour work day, the amount of such damages would be

5  approximately $13,440,000. (8 hours per day, multiplied by the minimum wage of

6  $8.00, multiplied by 30 days, multiplied by 7,000 former drivers). Again, this claim

7  alone is sufficient to meet the amount in controversy requirements necessary to

8  support removal to this Court.

9

10      41.    As set forth above, Defendant has demonstrated that the amount

11  placed in controversy by Plaintiff is substantially greater than the jurisdictional

12  amount of $5,000,000 required by the Act. The amount in controversy requirement

13  for CAFA is, therefore, met based on Plaintiff's pleaded facts and claims.

14

15  C.    **No CAFA Exceptions Apply**

16      42.    CAFA contains a number of exceptions to its grant of original

17  jurisdiction, contained in 28 U.S.C. §§ 1332(d)(3)-(5). However, none of these

18  exceptions are applicable here.

19

20      43.    The first is a discretionary exception based on the number of

21  putative class members found in the state where the action was filed. *See* 28 U.S.C.

22  § 1332(d)(3). However, the exception only applies where the "primary defendants

23  are citizens of the State in which the action was originally filed." Here, the action

24  was originally filed in California and, as noted above, Defendant in this action is

25  not a citizen of California. Thus, this exception does not apply.

26

27      44.    Similarly, 28 U.S.C. § 1332(d)(4) contains two further

28  exceptions to CAFA's grant of jurisdiction, based on the number of putative class

1  members in the state in which the action was filed. However, this exception, too,

2  only applies where all primary defendants, or at least one defendant, is a "citizen of

3  the State in which the action was originally filed." *See* 28 U.S.C. §§

4  1332(d)(4)(A)(i)(II) and 1332(d)(4)(B). Given that this action was originally filed

5  in California, and Defendant is not a California citizen, these exceptions also do not

6  apply.

7

8       45.     Finally, 28 U.S.C. § 1332(d)(5) presents two additional

9  exceptions for Defendants who are government entities, or putative classes which

10  number less than 100 in the aggregate. *See* 28 U.S.C. §§ 1332(d)(5)(A)-(B). Given

11  that Defendant is not a governmental entity, and the proposed class numbers are in

12  the thousands, these exceptions also do not apply.

13

14                               IV.

15                          **JOINDER**

16       46.     Defendant is not aware of any other defendant that exists and

17  who has been named in the Complaint or who has been served with a summons and

18  the Complaint. *See* Exhibit A.

19

20                               V.

21                  **TIMELINESS OF REMOVAL**

22       47.     This Notice of Removal is timely in that it has been filed within

23  thirty (30) days of service of the Complaint on Defendant on September 26, 2014.

24

25                               VI.

26                   **NOTICE TO PLAINTIFF**

27       48.     Contemporaneously with the filing of this Notice of Removal in

28  the United States District Court for the Central District of California, written notice

SMRH:433818274.6

-15-

Case 5:17-cv-01695-VAP-KK   Document 11-1   Filed 09/15/17   Page 77 of 78   Page ID
#:1814
Case 5:14-cv-02206-VAP-KK   Document 1   Filed 10/24/14   Page 17 of 18   Page ID #:17

1 │ of such filing will be served on Plaintiff's counsel of record, at Neal J. Fialkow and

2 │ James S. Cahill, Law Office of Neal J. Fialkow, Inc., 215 N. Marengo Avenue,

3 │ Third Floor, Pasadena, California, 91101. In addition, a copy of this Notice of

4 │ Removal will be filed with the Clerk of the Court for the Superior Court of the

5 │ County of Riverside, California.

6 │

7 │         49.     In compliance with 28 U.S.C. § 1446(a), true and correct copies

8 │ of all "process, pleadings, and orders" from the state court action served on

9 │ Defendant or filed by Defendant are attached hereto as Exhibits A and B.

10 │

11 │         WHEREFORE, having provided notice as is required by law, the

12 │ above-entitled action should be removed from the Superior Court for the County of

13 │ Riverside to this Court.

14 │
   │ Dated:  October 24, 2014
15 │

16 │                              SHEPPARD, MULLIN, RICHTER & HAMPTON,
   │                              LLP
17 │

18 │
   │                              By      _____/s/ Paul S. Cowie_____
19 │                                             RONALD J. HOLLAND
20 │                                             PAUL S. COWIE
   │                                             ROBERT MUSSIG
21 │                                          Attorneys For Defendant
22 │                                   SWIFT TRANSPORTATION CO. OF
   │                                          ARIZONA, LLC
23 │

24 │

25 │

26 │

27 │

28 │

SMRH:433818274.6                          -16-
                                                        NOTICE OF REMOVAL OF ACTION

## PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 333 South Hope Street, 43rd Floor, Los Angeles, CA 90071-1422.

On October 24, 2014, I served true copies of the following document(s) described as **NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 28 U.S.C. SECTIONS 132(d), 1441, AND 1446** on the interested parties in this action as follows:

Neal J. Fialkow
James S. Cahill
Law Offices of Neal J. Fialkow, Inc.
215 North Marengo Avenue, Third Floor
Pasadena, CA 91101

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the firm's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

☒ **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October 24, 2014, at Los Angeles, California.

Gina Lo Monaco

SMRH:434493032.1

-1-